COSMOPOLITAN TRUST COMPANY *vs.* MAX MITCHELL & others.

Suffolk.    March 20, 1922. — June 28, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Trust Company,* Liability of directors. *Constitutional Law,* Police power, Banking laws. *Equity Pleading and Practice,* Bill, Demurrer. *Equity Jurisdiction,* To enforce liability of directors of trust company. *Corporation,* Officers and agents. *Words,* "Claims."

A bill in equity brought by a trust company through the commissioner of banks in possession of its property and business contained the allegation that on a certain date the plaintiff's doors were closed and its business and assets were taken possession of by the commissioner of banks under authority of law given to him by St. 1910, c. 399, and there was no specification of reasons for the closing of its doors and the taking of possession of its business and assets. The defendants demurred on the ground that the statute was unconstitutional. *Held,* that, since no intendment can be made in favor of the pleader, if any one of the grounds enumerated in the statute for the act of the commissioner described in the bill was unconstitutional, the defendants were entitled to the advantage of it.

The police power of the General Court rightly may be exerted within rational limits to regulate and protect the safety of banking.

To determine the constitutionality of St. 1910, c. 399, § 2 (now G. L. c. 167, § 22), it must be considered in connection with St. 1910, c. 399, § 13 (now G. L. c. 167, § 33), the provisions of the two sections being complementary.

The powers conferred upon the commissioner of banks by St. 1910, c. 399, § 2, are not judicial but are purely administrative.

The provisions of St. 1910, c. 399, bound trust companies organized after their enactment to the same extent as if inserted in a special act of incorporation; but they went no further.

The power of inquiry into the condition of a bank with a view to determining the existence of contingencies, upon which the continuance in business of the bank is made to depend, may by law validly be reserved by the Legislature to itself or to administrative officers appointed under its authority; and such an inquiry into the affairs or defaults of a bank with a view to determining whether it shall be permitted to continue in business or shall be required to discontinue and liquidate its affairs is not a judicial act.

The provisions of St. 1910, c. 399, § 2 (now G. L. c. 167, § 22), although they are drastic in operation, are not in excess of the police power of the General Court, are not in violation of art. 10, 11, 12 or 30 of our Declaration of Rights nor of art. 14 of the Amendments to the Federal Constitution, and are constitutional.

The commissioner of banks in possession of the property and business of a trust company under the provisions of G. L. c. 167, § 22, is authorized by §§ 24, 25 of that chapter to bring a bill in equity in the name of the trust company

against its directors to enforce whatever liability on their part may exist in favor of the trust company founded on their conduct as its directors.

The liability of directors of a trust company for neglect of their duties and for mismanagement of their corporation comes within the fair meaning of "claims belonging to" the trust company as those words are used in G. L. c. 167, § 24.

A bill in equity, brought in the name of a trust company by the commissioner of banks, contained allegations that the doors of the company had been closed and its property and business had been taken possession of by the commissioner under St. 1910, c. 399, that the commissioner still was in possession and that the defendants had committed various acts of misfeasance and malfeasance and had violated their duties as directors. The prayers were for a decree directing the directors to pay to the plaintiff the losses sustained by reason of their acts. *Held,* that the frame and averments of the bill made it plain that the commissioner was bringing the suit for the ultimate benefit of the creditors.

The commissioner of banks, not being a receiver but an executive or administrative officer carrying out a legislative policy, was not required to secure permission of the court to bring the suit above described, authority to do so being conferred upon him by G. L. c. 167, § 25.

The directors of a Massachusetts trust company having a savings department are subject to the same fiduciary obligations as technical trustees of specific trust property.

The circumstance that directors of a Massachusetts trust company having a savings department manage it in behalf of stockholders for profit and as a bank of deposit and discount as well as a banking institution for savings department depositors, does not lessen their fiduciary responsibility, which remains the same as that of trustees of a savings bank and that of technical trustees of specific trust property.

The remedy at law of a Massachusetts trust company having a savings department to enforce the liability of its directors for misfeasance and malfeasance in office resulting in loss to the company is not exclusive, but a suit in equity also may be maintained for that purpose.

Jurisdiction in equity of a suit by a Massachusetts trust company having a savings department to enforce the liability of its directors for misfeasance and malfeasance in office resulting in loss to it, rests on the existence of the fiduciary relation which the directors bear to the corporation and also is supported by the considerations that multiplicity of suits will be avoided, that the inquiries of necessity will involve complicated accounts, and that the relief afforded by equity is better adapted to the working out of justice among the parties.

A bill in equity, brought in the name of a trust company having a savings department by the commissioner of banks who took possession of its property and business under St. 1910, c. 399, § 2, against thirteen directors, stated the times when each defendant's term of office began, which showed that their periods of office were different, and set forth over thirty instances of loans, describing them in detail, in each instance stating wherein the making or retaining of the loan was a breach of the directors' duty and the approximate loss resulting to the plaintiff and closing with a statement in substance that "the defendants, who authorized and approved said loans, were guilty of gross negligence in so doing, and are responsible, and should be held liable for all losses suffered in connection therewith." While some of the defendants were not directors during the entire period for which recovery was sought, losses

were alleged to have occurred while each was in office. Upon demurrers by the defendants severally, it was *held*, that

(1) The allegations to the effect that the losses which depleted the resources of the trust company followed as the direct result of these failures to exercise prudence, sound discretion and good judgment in the management of its affairs as the proximate causes were sufficient;

(2) If participation on the part of the several directors was proved as alleged, the facts would warrant a finding of breach of the duty resting on them and on each of them;

(3) The fact that some of the defendants were not directors during the entire period covered by the acts of misfeasance and of malfeasance specified did not make the bill demurrable, there being losses specified which occurred while each director was in office, and the precise extent of the responsibility of each being a matter of proof rather than of pleading;

(4) There were adequate details and sufficient certainty in the statement of the several loans alleged to have been made in violation of duty;

(5) While no one of the defendants could be held liable for anything save the results of his own misconduct, it was not necessary in pleading to point out as to each bad loan the individual directors who participated in negligently causing that particular loss;

(6) The allegations of damage were sufficient;

(7) The fact that the actual loss on each loan was not asserted with precision was not fatal;

(8) While there were numerous different subjects and some of the defendants were not interested in all of them, the bill was not multifarious, each party having an interest in some of the matters in the suit and they being connected with the others.

BILL IN EQUITY, filed in the Supreme Judicial Court on August 18, 1921, and afterwards amended, by Cosmopolitan Trust Company, acting through the commissioner of banks in possession of its property and business, against Max Mitchell, Patrick J. Bergin, Rocco Brindisi, Edward C. Donnelly, Michael J. Jordan, Patrick F. O'Keefe, Raymond H. Oveson, Benjamin A. Prager, Simon Vorenberg, Silas Peirce, Gabriele Stabile, Patrick B. Magrane and Hiram J. Potter, alleged to have been directors of the plaintiff at the time the commissioner of banks took possession of its property and business on September 25, 1920.

The allegations of the bill in substance were as follows:

The plaintiff's organization as a trust company was completed according to law in January, 1912, and it began business as a trust company, with its banking rooms and place of business in Boston, on or about April 3, 1912, and continued to carry on a general banking business in Boston until September 25, 1920, when its doors were closed and its business and assets were

taken possession of by the commissioner of banks under authority of law given to him by St. 1910, c. 399. Since that date it has done no new business, and its affairs and assets have been and still are in the hands of the commissioner of banks under the provisions of law for the liquidation of trust companies.

. The capital of the plaintiff, exclusive of surplus, was $200,-000 from the date of its organization to February 12, 1920, when its capital was increased to $600,000 and the surplus was increased to $400,000.

On or about December 1, 1912, a savings department was duly established by the plaintiff and the plaintiff continued to run that department to September 25, 1920.

On September 25, 1920, the plaintiff was *insolvent.*

The several defendants were directors of the plaintiff on September 25, 1920, and the defendant Mitchell was also president. The dates when the defendants became officers were as follows (the word "qualified" being used to signify the taking of the oath required by law):

Max Mitchell, elected and qualified January 8, 1912; elected president April 6, 1914, continued as president to September 25, 1920.

Patrick J. Bergin, elected a director April 7, 1913; and qualified April 10, 1913.

Rocco Brindisi, elected a director and qualified on the same day, January 8, 1912.

Edward C. Donnelly, elected a director April 7, 1913; qualified April 10, 1913.

Michael J. Jordan, elected a director and qualified April 6, 1914.

Patrick F. O'Keefe, elected a director and qualified January 8, 1912.

Raymond H. Oveson, elected a director April 7, 1913; qualified April 10, 1913.

Benjamin A. Prager, elected a director April 3, 1917; qualified April 5, 1917.

Simon Vorenberg, elected a director and qualified January 8, 1912.

Silas Peirce, elected a director and qualified January 8, 1912.

Gabriele Stabile, elected a director April 6, 1913; qualified April 10, 1913.

Patrick B. Magrane, elected a director and qualified January 8, 1912.

Hiram J. Potter, elected a director June 6, 1916; qualified July 27, 1916; served as a director to April 3, 1918, when he declined re-election; re-elected January 6, 1920, to fill a vacancy; elected at the annual meeting of the stockholders April 7, 1920, and qualified April 12, 1920, and remained a director to the closing of the bank.

Each of the defendants (except Potter) continued to serve as director from the date of his first election and qualification to September 25, 1920, being annually re-elected, and each annually took the oath required by law.

The defendant Mitchell, as president, received a salary from the plaintiff. The defendant Peirce received a salary as chairman of the board of directors, and all the directors received fees for attendance at directors' meetings.

"7. That by-laws of the plaintiff company were duly adopted at its organization, and, with a few amendments not material to the matters complained of in this bill, were at all times in full force. That the said by-laws provided, among other things, that the directors should have the general management, control, and direction of all the business and affairs of the plaintiff company and of its trusts and undertakings with full power to make all investments; also that they should have full power to appoint officers and clerks, fix salaries, and generally to do any and every lawful act that they might deem proper to carry into effect the powers of the company; also that accurate books of the business of the company should be kept, which should at all times be open to the inspection of all of the directors. That the oath required by law, and taken by each defendant, as hereinbefore stated, was to the effect that he would, so far as the duty devolved upon him, diligently and honestly administer the affairs of the plaintiff company, and that he would not knowingly violate nor willingly permit to be violated any of the provisions of the statutes of the Commonwealth under which said company was organized.

"8. That, aside from the provisions of the by-laws and the undertaking assumed by each of the defendants in repeatedly taking the oath above recited, the said defendants were, as di-

rectors, legally bound diligently and honestly to administer the business of the plaintiff trust company and to exercise reasonable care and fidelity in attending to its business affairs.

"9. The defendants repeatedly violated the laws concerning the investment of the funds of trust companies, and the laws concerning the making of loans by trust companies, both the laws affecting the general or commercial department of the plaintiff company and the savings department. That the violations of law particularly complained of are as follows:

"(a) The making of many loans and investments of large amounts in violation of the provisions of G. L. c. 172, § 76, and the previous statutes to the same effect in force prior to the adoption of the General Laws, prohibiting the making of any new loans or investments by a Massachusetts trust company while its reserves are less than the legal requirements. That the reserves of the plaintiff company were for weeks and months at a time less than required by law, and the defendants continued to make loans and to violate the statutory prohibition.

"(b) By making loans of money in the savings department when no Investment Committee had been duly elected to pass upon the matter of said loans.

"(c) In making on numerous occasions loans from the general or commercial department so large that the credit given to single borrowers exceeded the one fifth of the total capital of the plaintiff company, and thereby violating the provision of G. L. c. 172, § 40, and the previous statutes to the same effect in force prior to the adoption of the General Laws, prohibiting the lending to any single borrower (with sundry exceptions not here material) of more than one fifth of the capital stock of a trust company having less than $500,000 capital.

"(d) By making loans from the savings department in such amounts that single borrowers on some occasions were allowed to borrow more than five per cent of the total deposits and undivided profits of the savings department, such loans being in violation of G. L. c. 168, § 54, cl. 9, and the previous statutes relating to the same matter in effect before the adoption of the General Laws. Said chapter 168 refers to savings banks, and the provisions thereof by G. L. c. 172, § 61, and the statutes

on this subject previous to the adoption of the General Laws are made applicable to deposits in savings departments of Massachusetts trust companies.

"(e) By violating the provisions of paragraph (a) of cl. 9 of G. L. c. 168, § 54, and the previous statutory provisions to the same effect in force prior to the adoption of the General Laws. That the defendants, while permitted by the statutory provisions just referred to to lend the money of the savings department on notes, the joint and several obligations of three or more responsible citizens of this Commonwealth, provided the total amounts lent any one concern under this provision should not exceed one per cent of the deposits of such corporation (that is, trust company), lent large sums from the savings department in some cases on notes having less than three names, and in many cases on notes of borrowers who were totally irresponsible, and in many cases lent borrowers from the savings department to amounts in excess of the one per cent limit provided for in the statute, as a result of which violation of law large losses were incurred by the plaintiff company, for which these defendants are responsible and should be held liable.

"(f) In violation of paragraph (b) of said cl. 9 of G. L. c. 168, § 54, and the previous statutory provisions to the same effect in force prior to the adoption of the General Laws, that the defendants, while permitted by the laws just referred to to lend money of the savings department on certain notes with one or more substantial sureties or endorsers, provided certain examinations of the affairs, assets, and liabilities of the borrowers should be made from time to time, and a copy thereof given to the savings department of the trust company making such loans, lent large sums from its savings department to various concerns without having such reports or examinations, and without having one or more substantial sureties or endorsers upon such notes, and the plaintiff company suffered great losses in connection with loans thus made. That the defendants are responsible for such losses and should be held liable therefor."

"The defendants did not exercise due diligence in the matter of making investments of the plaintiff company's moneys and in lending the funds of the plaintiff company. That they were

guilty of gross and repeated negligence both as regards said investments and loans. That the negligence and carelessness of the several defendants in negligently and recklessly lending the funds of the plaintiff company, and in negligently making investments thereof, resulted in very large losses to the plaintiff company, and wiped out its capital and surplus and undivided profits. That the negligence of the defendants covered a long period prior to the closing of the bank, but no claim is made herein to hold said directors or any of them liable for any negligence occurring more than six (6) years prior to the filing of this bill. That as a result of the negligence of the defendants as specified elsewhere in the bill the plaintiff company has lost in bad loans and investments about $5,000,000.

"10. And the plaintiff specifies as loans and investments negligently and improperly made by the defendants as directors of the plaintiff company as follows:" [Here followed detailed specifications, covering twenty-nine pages of the printed record, of certain loans and transactions. Each specification closed with a statement of approximate loss, followed by the statement, in substance, that "the defendants, who authorized and approved said loans, were guilty of gross negligence in so doing, and are responsible, and should be held liable for all losses suffered in connection therewith." These specifications, with letterings corresponding to those of the paragraphs of the amended bill, may be described as follows:]

(a) With New England Lumber Company, loss "not less than $650,000;" (b) With Samuel Orkin and Samuel Orkin Company, loss "not less than $50,000;" (c) With Marks Manufacturing Company, New England Toy Company and Nuddoll Manufacturing Company, loss "not less than $100,000;" (d) With Italian Importing Company, loss "not less than $150,000;" (e) with Universal Export and Import Company and Lewis F. Cardarelli, loss "not less than $225,000;" (f) with Hugh J. Dimond and Hugh J. Dimond and Company, total loans $423,010, borrowers in bankruptcy; (g) with Universal Leather Company, loss "not less than $75,000;" (h) with Monarch Can Manufacturing Company and Bakers Standard Manufacturing Company, loss "between $80,000 and $90,000, as nearly as can be estimated at the present time;" (i) with Trade and Investment Corpora-

tion, loss "approximately $200,000;" (j) with Mayflower Photoplay Corporation and Massachusetts Photoplay Corporation and Rainbow Film Company, "net loss . . . in excess of $700,000;" (k) with fourteen different corporations and certain individuals hereinafter named engaged in the business of running sixteen theatres in various parts of Massachusetts, Maine, and Rhode Island, or to some extent interested in some of the theatres, at which motion pictures and other attractions were shown, they being alleged on information and belief to have borne the names, Amesbury Amusement Company, Newport Amusement Company, Empire Amusement Company, Empire Theatre Realty Company, Fall River Consolidated Enterprises, Inc., New York and Fall River Amusement Company, Strand Amusement Company, Strand Theatres of Maine, Inc., Nickel Amusement Company, W. E. Greene Amusement Company, Newburyport Theatres, Inc., Newburyport Amusement Company, Liberty Amusement Company, and Waltham Central Square Amusement Company; and the names of the individual borrowers, as disclosed by notes on hand on September 25, 1920, were alleged to be Edna D. Mackenzie, William E. Reeves, Robert H. Bean, Abraham Jacobs, George L. Bowman, George J. O'Brien (a clerk employed by the plaintiff), Frank G. Howard, secretary of the plaintiff, and Benjamin A. Prager, a director of the plaintiff; loss on these transactions "not less than $800,000;" (l) with Bahman Iron Works Company, International Clay Machinery Company, Furnace Gas Producer Company, R. H. McElroy, Bernice P. Mellett and E. J. Anderle, loss $40,000; (m) with Bells MacHarg Company, Inc., loss "probably not less than $30,000;" (n) with Washington Essex Building Trust, loss "all or nearly all" of $120,000; (o) with Anna F. Monahan, loss "not less than $77,792.78;" (p) with the defendant Max Mitchell, loss "in the vicinity of $130,000;" (q) with Capitol Theatre Trustees, loss "heavy;" (r) with Bernard L. Gorfinkle, loss about $123,000; (s) with Hiram Miller, loss $40,000; (t) with Ernest G. Mitchell, loss $41,918.72; (u) with Mitchell Stain Manufacturing Company, loss $10,780; (v) with Ida Mitchell, loss $40,000; (w) with Leon Mitchell, loss $33,970; (x) with Arthur R. Morris, loss $40,000; (y) with Louis R. Mayer, $39,000; (z) with Philip Davis, loss $29,697.97;

(aa) with John M. Nichols, loss "not less than $75,000;" (bb) with Bertha Bernau, loss $40,000; (cc) with J. M. Moos, loss $28,000; (dd) with Sterne Brothers Company, loss "$40,000 and interest;" (ee) with International Trade Exchange, loss "$40,000 and interest;" (ff) with J. Masse, loss "$27,429.09 with interest;" (gg) with American Ammunition Company, loss "$40,000 and interest;" (hh) with Richard C. Cox and Sterling Products Company, loss $31,173.69; (ii) with National Packing Company, either $12,331.59 or $100,000; (jj) with James J. Donahue, loss "probably" $20,752.52; (kk) with Merrimack Development Company, loss "about $21,893.64;" (ll) with Mortimer Silverman, loss "nearly $39,642.84."

"11. And the plaintiff says that in the matter of some of the loans complained of, and particularly some of those made within the last few months that this plaintiff was open, pretended loans or so-called loans appear upon the books which were not true loans involving the paying out of actual money. That these pretended loans or so-called loans were placed on the books to take the place of other loans previously improperly and negligently made. That some of the said pretended loans or so-called loans made to shift debits, were within the last few months and made without any approval on the part of the defendants, except the defendant Mitchell. That in such cases such of the said new so-called loans as were in the plaintiff company at the time it failed were wholly fraudulent and did not in equity operate to cancel and discharge the previous loans, although same appear on the books to have been discharged. That all that took place was the substitution upon the books of one worthless, or nearly worthless, debtor in place of another of like financial irresponsibility. That in each case where a loan originally an improper or reckless one, for which these defendants or any of them were responsible, was shifted and juggled near the close of the trust company's business and put into the form of another worthless loan, these defendants are still responsible for all losses incurred. Also that many of the last renewals of notes, worthless or nearly so, were in some cases not expressly approved by votes of the defendants, but were notes renewed at the trust company apparently as a matter of course, many of them having been frequently renewed before. That in such cases the liability

of the defendants responsible for the losses relates back to the time of the original making of the worthless loans, and is not to be confined to the final renewals thereof or substitutions therefor and to the particular defendants who approved said final renewals or substitutions.

"12. And the plaintiff says that, in addition to the losses which the plaintiff trust company will suffer in the matter of the loans hereinbefore specified, it will in each and every instance suffer a loss of interest on the moneys negligently and improperly lent, and that the defendants should be held liable for such loss of interest in addition to losses of principal.

"13. And the plaintiff says the facts set forth in the bill of complaint, and in this amendment, concerning the financial irresponsibility and lack of credit of the various borrowers of loans to whom are complained of, and concerning the speculative nature of the business carried on by certain borrowers as hereinbefore specified, and the facts regarding the illegality of loans made, and the several grounds of such illegality, were all matters known to the defendants and each of them or might with reasonable diligence have been known to them; and that the facts regarding the dubious character and worthlessness of the investments of the plaintiff company, made by the defendants and specifically complained of in the bill, and in this amendment, were also known to the defendants and each of them or might with reasonable care have been known to them.

"14. And the plaintiff says that, at all times while the loans complained of were being made and renewed, the plaintiff company was a subscriber to at least three well-known and responsible credit agencies, including Dun's and Bradstreet's. That it was at all times possible for the defendants, at no expense or nominal expense, to get reasonably full reports on all borrowers who were engaged in any active business. That the defendants entirely neglected to utilize this important source of information, which, in the case of all or nearly all the borrowers above specified, would have disclosed poor credit, total loss of credit, or that borrowers were utterly unknown.

"15. And the plaintiff says that from time to time warnings were given the said defendants from various sources that various borrowers, specifications of whose borrowings have been here-

tofore stated, were of poor credit, in failing circumstances, and in general unworthy of substantial loans. That such warnings were disregarded, and not only did the defendants as directors not take steps to close the loan accounts of questioned borrowers, but in many cases they increased the same by large amounts, all of which contributed to the enormous losses which the plaintiff company will suffer.

"16. And the plaintiff says that directors of a banking corporation under the laws of Massachusetts are bound to use due care and diligence in the lending of the money of a trust company, the matter of the loans being peculiarly within their province and line of duty; that they may not neglect their duty in this respect and be free from liability in so doing. That their position as regards the depositors and stockholders is that of trustees, and that they are legally held to a high degree, not only of honesty, but of care and diligence. That the defendants, as directors of the plaintiff trust company, have, by their negligence, carelessness, and utter disregard of their duties, been responsible for the failure of the said company and enormous losses to the depositors in both the savings department and the commercial department, as well as to the stockholders. That they are responsible, and should be held liable by the court to such extent and in such amounts as the court shall find the losses suffered have been due to their negligence, misconduct, or disregard of law."

The prayers of the bill were —

"(a) That the several defendants may be decreed to be liable for all losses arising out of the matters hereinabove set forth; (b) that, upon the amounts of the liability of the several defendants being ascertained and determined, a suitable decree or decrees may be entered in favor of the plaintiff, requiring the defendants to pay said amounts; (c) that the defendants may be decreed to pay the plaintiff's costs; and (d) for such other and further relief as may be required by justice."

The bill was signed "Cosmopolitan Trust Company, Joseph C. Allen, Commissioner of Banks, in possession."

The defendants Peirce, Bergin, O'Keefe, Brindisi, Jordan, Stabile, Oveson, Donnelly and Potter filed identical demurrers on the following grounds:

"1. The plaintiff has not in and by said bill as amended made or stated a cause within the jurisdiction of this court sitting in equity.

"2. The plaintiff has not in and by said bill as amended made or stated a case entitling it to any relief in equity against this defendant.

"3. The plaintiff has a plain, adequate, and complete remedy at law for the matters and things in said bill as amended set forth.

"4. It appears by plaintiff's bill as amended that the same is exhibited against this defendant and the other defendants thereto for distinct matters and causes in which this defendant is not in any manner interested or concerned, and it is multifarious.

"4a. It appears by plaintiff's bill as amended that the plaintiff seeks relief in respect of matters which are in their nature separate and distinct, and it is multifarious.

"5. The plaintiff's bill as amended unites separate and distinct causes against various defendants, in many of which the defendants had neither a joint nor a common interest, nor a joint nor common duty or liability.

"6. The plaintiff's bill as amended does not allege with sufficient certainty by averments of facts or otherwise either fiduciary relations between the plaintiff and this defendant or accounts so complicated that they cannot be conveniently and properly adjusted and settled in an action at law, entitling the plaintiff to relief in equity.

"7. The plaintiff's bill as amended does not set forth with sufficient certainty the dates and amounts of each and several the loans and investments charged in section 10 . . . and subdivisions . . . to have been negligently and improperly made by the defendants.

"8. With respect to each of the loans and investments set forth in section 10 . . . the bill as amended fails to set forth with sufficient certainty acts or conduct of this defendant constituting either negligence or breach of fiduciary duty in the making thereof, entitling the plaintiff to relief against him.

"9. With respect to each of the loans and investments set forth in section 10 . . . the bill as amended fails to set forth with sufficient certainty acts or conduct of this defendant in the making thereof in violation of the laws concerning the in-

vestment or loaning of the funds of trust companies, entitling the plaintiff to relief against him.

"10. The authority of said Joseph Allen, commissioner of banks, by order or decree of court or otherwise, to commence and prosecute the above-entitled suit does not sufficiently appear from the allegations of said bill as amended.

"11. The plaintiff's bill as amended does not allege any facts by reason of which this defendant is liable as a director.

"12. The plaintiff's bill as amended does not allege any breach of duty of this defendant which was legal or proximate cause of any of the damage complained of.

"13. The plaintiff's bill as amended does not allege that the plaintiff has suffered any damage.

"14. The plaintiff's bill as amended sets forth facts which may result in damage to the plaintiff, but such damage is not alleged to have happened, and it may never happen.

"15. The plaintiff's bill as amended does not state the existence of facts from which a court could render a judgment against this defendant.

"16. The amount of the plaintiff's damage, if any, as stated in the amended bill cannot be fairly or definitely ascertained or liquidated in this proceeding.

"17. The plaintiff's bill as amended does not make or state any case entitling it to any relief in equity against this defendant in so far as it alleges any breach of duty that this defendant owed with reference to loans made from the savings department of said trust company as set out in [in certain subsections of] section 10.

"18. The plaintiff's bill as amended does not make or state any case entitling it to any relief in equity against this defendant in so far as it alleges any breach of duty that this defendant owed with reference to loans made from the commercial department of said trust company as set out in [certain subsections of] section 10. . . .

"19. The plaintiff's bill as amended does not make or state any case entitling it to any relief in equity against this defendant in so far as it alleges any breach of duty that this defendant owed with reference to investments made as alleged in [certain subsections of] section 10. . . .

"20. That the statute (St. 1910, c. 399 — see G. L. c. 167), under authority of which Joseph Allen, commissioner of banks, has taken possession of the business and assets of the Cosmopolitan Trust Company, as alleged in the bill of complaint as amended, and from which he alleges he derives his authority, is unconstitutional, for the reason that it violates art. 10, art. 11, and art. 12 of the Declaration of Rights of the Constitution of Massachusetts.

"21. That the statute (St. 1910, c. 399 — see G. L. c. 167) is unconstitutional for the reason that it violates art. 30 of the Declaration of Rights of the Constitution of Massachusetts.

"22. That the said statute (St. 1910, c. 399 — see G. L. c. 167) is unconstitutional for the reason that it violates section 1 of art. 14, § 1 of the articles in addition to and in amendment of the Constitution of the United States.

"23. The plaintiff's bill as amended does not set forth and specify with sufficient certainty the dates and amounts of the various loans and investments alleged to have been negligently and improperly made by the defendants by paragraph numbered 9 thereof.

"24. The plaintiff's bill [in a certain paragraph containing specifications, added by amendment] . . . unites separate and distinct causes against various defendants, and attempts to make various defendants, with the exception of the defendant Mitchell, responsible for actions alleged to have been done without their approval, and the defendants, with the exception of the defendant Mitchell, had neither a joint nor a common interest with the defendant Mitchell in said actions, nor a joint nor common duty or liability."

A demurrer filed by the defendant Simon Vorenberg was identical with the foregoing except that the following paragraph was added: "25. That the bill as amended invokes the jurisdiction of this court in equity on the ground that the defendants are in some sense trustees, and thus jointly liable for negligence when acting as a board of directors; while in paragraph 9 the bill charges their negligence as several, which, if true, would plainly render them separately liable, if at all, only in actions of tort at law. The defendants are entitled to know definitely on which of these two inconsistent theories of fact and law the bill is based."

The defendants Prager, Magrane and Mitchell also filed demurrers. The grounds therein alleged, although in some respects differently phrased, are included in the demurrers above described, except that the demurrer of the defendant Magrane contained the following:

"7. The bill does not allege with sufficient certainty what ones of said loans or investments recited in each of said subdivisions were authorized or approved by this defendant or for what losses suffered in connection therewith it is sought by said bill to charge him, and the averment under each of such subdivisions of section 10 'that the defendants who authorized and approved said loans were guilty of gross negligence in so doing are responsible, should be held liable for all losses suffered in connection therewith,' is insufficient;"

and the demurrer of the defendant Mitchell contained the following:

"6. That the matters alleged in the bill as amended show that Joseph C. Allen, the commissioner of banks, in possession, and his agent, Henry O. Cushman, are trespassers.

"7. That, under the statutes regulating the powers and authority of the commissioner of banks of the Commonwealth of Massachusetts, the said commissioner has no authority to sue this defendant, as set forth in the bill of complaint as amended, regardless of the amount, if any, which may be due to creditors."

The suit was reserved by *Braley,* J., upon the bill and the several demurrers for determination by the full court.

*W. G. Thompson,* (*A. N. Beale & G. E. Mears* with him,) for the defendant Vorenberg.

*H. Williams, Jr.,* (*F. O. White & W. T. Snow* with him,) for the defendants Silas Peirce and Patrick J. Bergin.

*J. M. Hallowell,* for the defendant Max Mitchell.

*W. H. Hitchcock,* (*G. P. Beckford* with him,) for the defendant Gabriele Stabile.

*J. A. Sullivan,* (*J. M. Maloney* with him,) for the defendant Edward C. Donnelly.

*B. B. Jones,* (*J. W. Sullivan* with him,) for the defendant Patrick B. Magrane.

*F. N. Nay,* (*W. A. Kneeland & G. L. Vaughan* with him,) for the plaintiff.

*F. M. Carroll,* for the defendant Patrick F. O'Keefe; *J. D. Graham & F. E. Slattery,* for the defendant Michael J. Jordan; *F. P. Fralli,* for the defendant Rocco Brindisi, and *J. W. Spring,* for the defendant Benjamin S. Prager, submitted a brief.

RUGG, C.J.  This is a suit in equity brought in the name of the Cosmopolitan Trust Company by the commissioner of banks in possession of its property and business under G. L. c. 167, § 22, against thirteen persons as its directors for the purpose of holding them responsible for losses of the trust company. A demurrer has been filed by each defendant.  It is alleged in the bill that the commissioner of banks took possession of the property and business of the trust company on September 25, 1920, and that on that date it was insolvent.

1. A most important question is raised at the outset.  The constitutionality of the statute under which the commissioner of banks is acting is assailed as infringing various provisions of the Constitution of this Commonwealth and of the Constitution of the United States.  It is alleged in the bill that the Cosmopolitan Trust Company was duly organized under the law and carried on business "until September 25, 1920, when its doors were closed and its business and assets taken possession of by the commissioner of banks under authority of law given to him . . . by chapter 399 of the Acts of 1910."  No specifications of reasons for closing its doors and taking possession of its business and assets are set forth.  Therefore, if any one of the grounds for such act enumerated in the statute is unconstitutional, the defendants are entitled to the advantage of it, because no intendment can be made in favor of the pleader in such case.  *Old Dominion Co.* v. *Commonwealth,* 237 Mass. 269, 274.

The business of banking vitally concerns the public interests. Long established usage has given its sanction to legislative supervision and regulation to a greater or less extent of the conduct of banks.  The prevention and redress of the evil and damage to individuals and to the public, likely to arise from violation of their charters and of general laws and from insolvency of banks, have received the attention of the General Court at least since the enactment of St. 1838, c. 14.  It is of vast importance to the commercial prosperity, the manufacturing activity, and

the industrial welfare of the community that banks be managed with integrity and sagacity and according to the rules of law prescribed for their administration. The savings of the poor, the earnings of the thrifty, and the resources of the wealthy, alike depend upon the prevention of delinquency on the part of those who control and direct the affairs of banks. Checks drawn against deposits in banks have come to replace to so great an extent the use of currency and coin in the ordinary transactions of life that whatever rationally conserves their security is in the common interest. Reason and authority agree that the police power rightly may be exerted within rational limits to regulate and protect the safety of banking. *Commonwealth* v. *Farmers & Mechanics Bank,* 21 Pick. 542. *Noble State Bank* v. *Haskell,* 219 U. S. 104, 575.

The commissioner of banks is authorized to close the doors of the trust company and take possession of all its assets and business by § 2 of said c. 399 (see now G. L. 167, § 22) whenever it appears to him "[1] that any bank under his supervision has violated its charter or any law of the Commonwealth, or [2] is conducting its business in an unsafe or unauthorized manner, or [3] that its capital is impaired, or [4] if it shall refuse to submit its books, papers and concerns to the inspection of said commissioner or of his duly authorized agents, or [5] if any officer of such bank shall refuse to be examined upon oath by the commissioner or his deputies touching its concerns, or [6] if it shall suspend payment of its obligations, or [7] if from an examination or from a report provided for by law the bank commissioner shall have reason to conclude that such bank is in an unsound or unsafe condition to transact the business for which it is organized, or that it is unsafe or inexpedient for it to continue business." It has not been argued that the several statutory grounds thus specified do not justify a suspension of the right of the trust company to conduct a banking business. Therefore, it is not necessary to examine them in detail and delimit their scope. The contention is that the establishment of some or each one of these grounds involves the exercise of the judicial faculty, that confessedly the commissioner of banks is an executive or administrative officer and not an appointee of the courts nor clothed with any judicial functions, and hence that

the decision of these matters by the commissioner of banks violates art. 30 of the Declaration of Rights, which prohibits the executive, the legislative and the judicial departments of government each from exercising in any particular the powers of either or both of the others.

The validity of § 2 of c. 399, St. 1910, already quoted (see now G. L. c. 167, § 22), must be considered in connection with § 13 of said c. 399, G. L. c. 167, § 33. This later section provides for a full judicial review of the merits of the conduct of the commissioner of banks in taking possession of the business and assets of any banking corporation, to be had on application of such corporation filed in court within ten days after such taking possession, and empowers the court after finding the facts to dismiss the application or to enjoin the commissioner of banks from further proceedings and to direct him to surrender such business and property to the banking corporation. These two provisions of the statute are complementary one of the other.

The powers conferred upon the commissioner of banks are not judicial but purely administrative. His decision to take possession is not a judicial adjudication. It binds nobody. It is subject to immediate judicial inquiry. The act of the commissioner of banks is designed primarily to conserve the property of the bank for the benefit of its creditors and its stockholders. It rests upon an inquiry into facts, which may be imposed upon officers plainly possessing no judicial authority when intended to be the basis of administrative action only.

The provisions of statute here assailed were enacted before the organization of the trust company and bind it to the same extent as if inserted in a special act of incorporation, but go no further. *Arlington Board of Survey* v. *Bay State Street Railway*, 224 Mass. 463, 468. *Interstate Consolidated Street Railway* v. *Massachusetts*, 207 U. S. 79, 84. See *Terral* v. *Burke Construction Co.* 257 U. S. 529.

The power of inquiry into the condition of a bank with a view to determine the existence of contingencies, upon which the continuance in business of the bank is made to depend, may by law validly be reserved by the Legislature to itself or to administrative officers appointed under its authority. Such an inquiry into the affairs or defaults of a corporation with a view to con-

tinue or to discontinue it is not a judicial act. *Crease* v. *Babcock,* 23 Pick. 334, 344.

There are numerous decisions of the Supreme Court of the United States to the effect that inquiry into facts may be devolved upon subordinate executive or administrative officers and that findings or decisions reached by such officers may be made conclusive without conferring judicial power or violating any guaranty secured by the Federal Constitution. See, for example, *Oceanic Steam Navigation Co.* v. *Stranahan,* 214 U. S. 320; *West* v. *Hitchcock,* 205 U. S. 80; *Zakonaite* v. *Wolf,* 226 U. S. 272, 275; *Selective Draft Law Cases,* 245 U. S. 366, 389. These decisions go very far. Without intimating whether such statutes might infringe some guaranty of the Constitution of this Commonwealth, they illustrate the length to which the doctrine of executive or administrative as distinguished from judicial inquiry has been carried.

The enactment of St. 1910, c. 399, marked a significant departure in legislation in this Commonwealth. Previously it was not possible for any officer to take possession of the property or business of a banking institution except after an adjudication by a court. It is fair to assume from the similarity of provisions that in important particulars said c. 399 was modeled on the national bank act of the United States. That act authorizes the comptroller of the currency to take possession of property and all assets of a national bank (1) when it has refused to pay its circulating notes, U. S. Rev. Sts. §§ 5227, 5234; (2) when directors knowingly violate or knowingly permit officers and agents to violate any provision of the national bank act first to be ascertained by judgment of a court, 19 U. S. Sts. at Large, 63, U. S. Rev. Sts. § 5239; (3) when a creditor obtains judgment which remains unsatisfied for thirty days, 19 U. S. Sts. at Large, 63; (4) when the comptroller is satisfied of the insolvency of a national bank, 19 U. S. Sts. at Large, 63; (5) when capital stock has not been fully paid in and is thus reduced below the legal minimum and remains so for thirty days, U. S. Rev. Sts. § 5141; (6) for failure to make good lawful money reserve within thirty days after notice, U. S. Rev. Sts. § 5191. See federal reserve act of December 23, 1913, § 19; 38 U. S. Sts. at Large, 270, as amended by act of June 21, 1917, § 10; 40 U. S.

Sts. at Large, 239; (7) where a bank acquires its own stock to prevent loss on debt previously contracted in good faith and same is not disposed of within six months, U. S. Rev. Sts. § 5201; (8) for failure to make good impairment in its capital stock and refusing to go into liquidation within three months after notice, U. S. Rev. Sts. § 5205; (9) for false certification of checks, U. S. Rev. Sts. § 5208. The only provision in the national bank act for judicial inquiry into the soundness of the conclusions of the comptroller in taking possession of the assets and property of a national bank is in U. S. Rev. Sts. § 5237, and is confined to the question whether the bank has refused to redeem its circulating notes. That act, which appears thus in some particulars to be more severe than St. 1910, c. 399, had been upheld as constitutional long before the later statute was enacted. It was said in *Bushnell* v. *Leland*, 164 U. S. 684, at page 685, by Mr. Justice White: "All these alleged errors may be reduced to the single contention that under the national banking law the Comptroller of the Currency is without power to appoint a receiver to a defaulting or insolvent national bank, or to call for a ratable assessment upon the stockholders of such bank, without a previous judicial ascertainment of the necessity for the appointment of the receiver and of the existence of the liabilities of the bank, and that the lodgment of authority in the Comptroller, empowering him either to appoint a receiver or to make a ratable call upon the stockholders, is tantamount to vesting that officer with judicial power in violation of the Constitution. All of these contentions have been long since settled, and are not open to further discussion. *Kennedy* v. *Gibson*, 8 Wall. 498; *Casey* v. *Galli*, 94 U. S. 673; *United States* v. *Knox*, 102 U. S. 422." *In re Chetwood, petitioner*, 165 U. S. 443, 458.

These decisions of the Federal Supreme Court are strongly persuasive as to the constitutionality of the act here attacked. There is not to be found in the Constitution of the United States the peculiarly forceful, clear and beautiful thoughts and words of art. 30 of the Declaration of Rights of the Massachusetts Constitution. In substance and effect, however, the Federal Constitution as it has been interpreted does not differ materially from that article. The Constitution of the United States by art. 3, § 1, vests the judicial power of government in "one su-

preme court, and in such inferior courts as the congress may from time to time ordain and establish." This always has been construed as the equivalent of a prohibition on Congress to exercise judicial functions or to impose judicial powers on any other officers of government than the courts. It was said in *Kilbourn* v. *Thompson*, 103 U. S. 168, at pages 190, 191: "It is believed to be one of the chief merits of the American system of written constitutional law, that all the powers intrusted to government, whether State or national, are divided into the three grand departments, the executive, the legislative, and the judicial. That the functions appropriate to each of these branches of government shall be vested in a separate body of public servants, and that the perfection of the system requires that the lines which separate and divide these departments shall be broadly and clearly defined. It is also essential to the successful working of this system that the persons intrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other. . . . In the main . . . that instrument . . . has blocked out with singular precision, and in bold lines, in its three primary articles, the allotment of power to the executive, the legislative, and the judicial departments of the government. It also remains true, as a general rule, that the powers confided by the Constitution to one of these departments cannot be exercised by another." *Ocampo* v. *United States*, 234 U. S. 91, 100.

This court always has been most solicitous in maintaining the sharp division between the three departments of government as declared by art. 30 of the Declaration of Rights. It has declined steadfastly to exercise any functions except those strictly judicial in their nature. *Case of Supervisors of Election*, 114 Mass. 247. *Boston* v. *Chelsea*, 212 Mass. 127. It has refused to recognize the validity of acts where the Legislature has undertaken to perform the judicial office or to delegate that faculty to any save to the courts. *Denny* v. *Mattoon*, 2 Allen, 361. *Forster* v. *Forster*, 129 Mass. 559. *Opinion of the Justices*, 234 Mass. 612, 621. See *Flint & Fentonville Plank-road Co.* v. *Woodhull*, 25 Mich. 99. The present adjudication is in full accord with

those decisions and does not in any degree impair their force. The statute here in question is of a different class.

These considerations lead us to the conclusion that the statute here assailed, although drastic in operation, does not exceed constitutional bounds. The Commonwealth as represented by the General Court is the creator of the trust company and the guardian of the public interests affected by the conduct of its business. The police power is broad. Whatever reasonably may be thought to promote the general welfare within proper limits, not resting merely on expediency, if not infringing upon some specific protection of the Constitution, is permissible. We have no concern with the wisdom of a statute, as that is not within our province.

The reasons which have been stated apply with equal force to arts. 10, 11, 12 of our Declaration of Rights, and to art. 14 of the Amendments to the Constitution of the United States.

The constitutionality of acts in every essential like St. 1910, c. 399, § 2 (see now G. L. c. 167, § 22), has been upheld in *Jeffries* v. *Bacastow,* 90 Kans. 495; *Montgomery Bank & Trust Co.* v. *Walker,* 181 Ala. 368; *McDavid* v. *Bank of Bay Minette,* 193 Ala. 341; *LeMonte* v. *Lurich,* 86 N. J. Eq. 26, affirmed in 86 N. J. Eq. 251; *Davis* v. *Moore,* 130 Ark. 128; *Carnegie Trust Co.* v. *Kress,* 215 N. Y. 706; *Cartmell* v. *Commercial Bank & Trust Co.* 153 Ky. 798, and *American Southern National Bank* v. *Smith,* 170 Ky. 512. The validity of similar statutes was assumed without discussion as to constitutionality in *Wisconsin Trust Co.* v. *Cousins,* 172 Wis. 486; *Ward* v. *Oklahoma State Bank of Atoka,* 51 Okla. 193; *Aetna Casualty & Surety Co.* v. *Moore,* 107 Wash. 99.

The present statute cannot in our opinion be said to transcend the constitutional power of the General Court. *Lorando* v. *Gethro,* 228 Mass. 181. *Holcombe* v. *Creamer,* 231 Mass. 99, and cases there reviewed. *Opinion of the Justices,* 234 Mass. 597, and cases there reviewed. *Noble State Bank* v. *Haskell,* 219 U. S. 104, 575. *State Savings & Commercial Bank* v. *Anderson,* 238 U. S. 611, affirming *S. C.* 165 Cal. 437. *Title Guaranty & Surety Co.* v. *Allen,* 240 U. S. 136, affirming *S. C.* 27 Idaho, 752. *State* v. *State Bank & Trust Co.* 31 Nev. 456, 469–472. *Pacific Live Stock Co.* v. *Lewis,* 241 U. S. 440. *La Tourette* v. *McMaster,* 248 U. S. 465, 467.

2. The commissioner of banks upon these averments is authorized to bring suit against the directors for whatever liability on their part may exist in favor of the trust company founded on their conduct as its directors. Among other duties imposed by statute upon the commissioner of banks, after taking possession of the property and business of a trust company, are those to collect "all debts due and claims belonging to it," to "do all acts necessary to conserve its assets," to "proceed to liquidate its affairs," to enforce the individual liability of the stockholders, and to prosecute and defend all suits and other legal proceedings in its name. G. L. c. 167, §§ 24 and 25. The liability of directors for neglect of their duties and for mismanagement of their corporation comes within the fair meaning of claims belonging to the corporation. When not narrowed by its context the word "claims" is of large import. *Cutting* v. *American Ins. Co.* 197 Mass. 131. It is one of the broadest and most comprehensive terms known to the law. It is usual to enforce the liability of directors for wrongs to the corporation at the instance of stockholders, but that liability is also in the nature of an asset of the corporation for the benefit of its creditors. The frame and averments of the bill make it plain that the commissioner of banks is bringing this suit for the ultimate benefit of creditors. The commissioner of banks, not being a receiver but an executive or administrative officer carrying out a legislative policy, was not required to secure permission of the court to bring the suit. The authority is conferred upon him by the statute. *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass. 207, 209.

3. The question of the liability of trustees of savings banks under our laws was exhaustively examined in *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252. It there was said at page 256, "the savings bank and its managing officers or trustees are held to the same duty as ordinary trustees of a direct trust. . . . For honest errors of judgment, while acting with ordinary skill and prudence, measured according to the demands of the duties or business which they have taken upon themselves, they are not to be held liable; but they cannot excuse themselves from the consequences of their misconduct or of their ignorance or negligence by averring that they have failed merely to exercise ordinary skill, care and vigilance. . . . As was said by Beas-

ley, C.J., in *Williams* v. *McKay*, . . . [13 Stew. 189] 'The equitable rule which is applicable to persons holding official positions such as were held by these defendants, is not in doubt. The duty belonging to such a situation is a plain one, — to care for the moneys intrusted to them in the manner provided in the charter, and to exercise ordinary care and prudence in so doing. It is true that the defendants were unpaid servants, but the duty of bringing to their office ordinary skill and vigilance was none the less on that account, for to this extent there is no distinction known to 'the law between a volunteer and a salaried agent. These defendants held themselves out to the public as the managers of this bank, and by so doing they severally engaged to carry it on in the same way that men of common prudence and skill conduct a similar business for themselves. This is the measure of the responsibility of officers of this kind.' This is the same rule of duty to which other trustees have been held, that they must 'exercise a sound judgment and a reasonable and prudent discretion.' *Davis, appellant*, 183 Mass. 499, 501. *Ashley* v. *Winkley*, 209 Mass. 509. *Pine* v. *White*, 175 Mass. 585, 590." It also is there pointed out that cases like *Lyman* v. *Bonney*, 118 Mass. 222, and *Hill* v. *Murphy*, 212 Mass. 1, to the effect that directors of pure business corporations acting honestly and within their powers are not responsible for ·mere errors of judgment or want of prudence, are not applicable to savings banks under our laws. *Gilson* v. *Cambridge Savings Bank*, 180 Mass. 444, 446.

There is thus adopted and made applicable to the trustees of savings banks the rule governing the liability of trustees under wills and other written instruments. The standard by which their conduct is measured is good faith and sound discretion as those terms ought to be understood by reasonable men of wise judgment. *Kimball* v. *Whitney*, 233 Mass. 321, 331. *Harvard College* v. *Amory*, 9 Pick. 446, 461.

This rule prevails in other jurisdictions and does not differ essentially from that of the federal courts. It was succinctly stated in *Kavanaugh* v. *Commonwealth Trust Co. of New York*, 223 N. Y. 103, 105, that "directors in financial institutions . . . are summoned to the same degree of care and prudence that men prompted by self-interest generally exercise in their own affairs."

It was said in *Martin* v. *Webb,* 110 U. S. 7, at page 15: "Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers." *Briggs* v. *Spaulding,* 141 U. S. 132. *Thomas* v. *Taylor,* 224 U. S. 73. *Bowerman* v. *Hamner,* 250 U. S. 504. *Bates* v. *Dresser,* 251 U. S. 524. *Dovey* v. *Cory,* [1901] A. C. 477. *Trask* v. *Chase,* 107 Maine, 137, 144. *Emerson* v. *Gaither,* 103 Md. 564. *Land Credit Co. of Ireland* v. *Lord Fermoy,* L. R. 5 Ch. 763, 770. *Marshall* v. *Farmers & Mechanics' Savings Bank of Alexandria,* 85 Va. 676. *Warner* v. *Penoyer,* 33 C. C. A. 222 (91 Fed. Rep. 587).

The law of this Commonwealth is settled by *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252. It is that trustees of savings banks are subject to the same fiduciary obligations as technical trustees of specific trust property.

4. The standard of liability established by *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252, applies to the directors of the trust company who here are defendants. The trust company in question had a savings department, for which were prescribed under the law many of the safeguards previously established for savings banks. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478. The relation of the directors to this trust company with its savings department was fiduciary in the same sense as is that of trustees to a savings bank. There are numerous expressions in our decisions that directors of business corporations occupy a fiduciary relation to the corporation. *Elliott* v. *Baker,* 194 Mass. 518, 523. *United Zinc Co.* v. *Harwood,* 216 Mass. 474. *Allen-Foster-Willett Co. petitioner,* 227 Mass. 551. A critical examination of the meaning of those expressions and an analysis of the extent and limits of those cases is not here pertinent. It is enough to say that the present defendants fall within the principles of liability established for trustees of savings banks.

5. The circumstance, that directors of the trust company managed it in behalf of stockholders for profit and as a bank of deposit and discount as well as a banking institution for savings department depositors, makes no difference in respect to their liability. To a greater or less degree all the assets of the

trust company are for the security of depositors in the savings department. Every reason supporting the judgment in *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252, is of equal potency in holding directors of a trust company with a savings department to the same degree of responsibility.

It follows that a suit in equity may be maintained to enforce the liability of directors and that the remedy at law is not exclusive. That point was settled for this Commonwealth in *Warren* v. *Para Rubber Shoe Co.* 166 Mass. 97, where it was held that, in view of the fiduciary relation to the corporation, a bill in equity could be maintained by the corporation against an officer guilty of a breach of that fiduciary duty as well as an action at law. That decision has been followed and applied to various states of facts as well as in *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252. *United Zinc Co.* v. *Harwood,* 216 Mass. 474, and cases cited at 476. *Allen-Foster-Willett Co. petitioner,* 227 Mass. 551. Jurisdiction in equity has frequently been upheld for the ascertainment of the liability of bank directors. *Hornor* v. *Henning,* 93 U. S. 228. *Martin* v. *Webb,* 110 U. S. 7. *Briggs* v. *Spaulding,* 141 U. S. 132. *Bowerman* v. *Hamner,* 250 U. S. 504. *Bates* v. *Dresser,* 251 U. S. 524. *Curtis* v: *Connly,* 257 U. S. 260. *Williams* v. *Brady,* 232 Fed. Rep. 740. *Cockrill* v. *Cooper,* 29 C. C. A. 529 (86 Fed. Rep. 7, 14). That jurisdiction rests on the existence of the fiduciary relation. *Rolikatis* v. *Lovett,* 213 Mass. 545. *In re Hallett's Estate,* 13 Ch. D. 696, 710. It also is supported by the considerations that multiplicity of suits will be avoided, that the inquiries of necessity will involve complicated accounts, and that the relief afforded by equity is better adapted to the working out of justice between all parties. *Bliss* v. *Parks,* 175 Mass. 539.

6. It is not necessary to analyze or to narrate in detail the allegations of the bill. It is plain that they set out loans made to individual borrowers far beyond the statutory limit, G. L. c. 172, § 40; c. 168, § 54, cl. 9, (a) (b), loans made while the reserves were below the statutory requirement, G. L. c. 172, § 76, loans from the savings department funds on paper with less than three responsible names, and otherwise in violation of law. The bill also sets out loans to persons without credit, without business reputation and without financial resources, and being other-

wise highly imprudent from the standpoint of sound banking. There are numerous specifications of particular loans alleged to come under these several headings.

7. There are averments that the defendants as directors did not exercise due diligence and were guilty of gross negligence and were reckless and careless and violated the laws of the Commonwealth in authorizing and approving loans and investments and in managing the affairs of the trust company, accompanied by many specifications as to particulars. The allegations are sufficient to the effect that the losses which depleted the resources of the trust company followed as the direct result of these failures to exercise prudence, sound discretion and good judgment in the management of its affairs as the proximate causes. If participation on the part of the several directors is proved as alleged, there are facts warranting a finding of breach of the duty resting on them and each of them. While some of the defendants were not directors during the entire period for which recovery is sought, losses are alleged to have occurred while each was in office. The precise extent of the responsibility of each is matter of proof rather than of pleading.

8. There are adequate details and sufficient certainty in the statement of the several loans alleged to have been made in violation of duty. It is not necessary in a case of this nature that the specific connection of each defendant with each investment be particularized in the pleadings. It would be impracticable in advance to separate those events which well may be somewhat blended. *Ginn* v. *Almy,* 212 Mass. 486. *Almy* v. *Almy, Bigelow & Washburn, Inc.* 235 Mass. 227. The case at bar is distinguishable in this respect from *Price* v. *Coleman,* 21 Fed. Rep. 357.

Manifestly no one of the defendants can be held liable for anything save the results of his own misconduct. It is not necessary, however, in pleading to point out as to each bad loan the individual directors who participated in negligently causing that particular loss. Their conduct may be so intermingled that it would be impossible conveniently to separate the facts in advance of an investigation. The general but definite averments are sufficient. *Attorney General* v. *Pelletier,* 240 Mass. 264, 304–306.

9. The allegations of damage are sufficient. It is definitely averred that the trust company has lost about $5,000,000 in bad loans and investments as a result of the negligence of the several defendants. There is nothing premature in the suit in view of that allegation. The different loans specified do not cut down, impair nor dissipate this positive allegation. They are matters of proof. The fact that the actual loss on each is not asserted with precision is not fatal in this connection. *Walton* v. *Ruggles,* 180 Mass. 24. *Paro* v. *St. Martin,* 180 Mass. 29. As was said in *St. Louis* v. *Knapp Co.* 104 U. S. 658, at page 661, "It was not necessary, in such a case, to aver all the minute circumstances which may be proven in support of the general statement or change in the bill . . . in most cases, general certainty is sufficient in pleadings in equity." *Campbell* v. *Watson,* 17 Dick. 396, 405. *Sigwald* v. *City Bank,* 74 S. C. 473, 477.

10. The bill is not multifarious. While there are numerous different subjects, and some of the defendants are not interested in all of them, these factors are not decisive. There is no inflexible gauge by which to test multifariousness, and each case must depend largely upon its own circumstances. *Reno* v. *Cotter,* 236 Mass. 556, 563. "It is not indispensable that all the parties should have an interest in all the matters contained in the suit; it is sufficient if each party has an interest in some matters in the suit, and that they are connected with the others." *Lenz* v. *Prescott,* 144 Mass. 505, 513. *Lovejoy* v. *Bailey,* 214 Mass. 134, 151. *Coram* v. *Davis,* 209 Mass. 229, 249. The case at bar is well within the authority of *Raynes* v. *Sharp,* 238 Mass. 20, and the decisions there collected.

What has been said disposes either categorically or by necessary implication of all the numerous points urged in behalf of the several defendants.

*Demurrers overruled.*