FREDERICK L. CUTTING vs. AMERICAN INSURANCE
COMPANY.

Suffolk.    December 3, 1907. — January 1, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Insurance.   Insolvency.   Corporation.   Words,* "Net assets," "Claims for losses."

Upon an information by the insurance commissioner under R. L. c. 118, § 7, against
a domestic insurance company praying for the appointment of a receiver to take
possession of the property of the company and to settle its affairs, where it ap-
pears that at the date of the filing of the information the assets of the company
exceeded its liabilities by about $40,000 if claims of $300,000 against the com-
pany were disregarded, and that these claims were based upon the alleged in-
validity of a settlement which the company regarded as final but which was
disputed by the policy holders with whom it was made, a master is not justified
in finding that the defendant is solvent, a company with outstanding disputed
claims exceeding its assets being insolvent as matter of law for the purpose of
proceedings under the statute, according to the rule prescribed by R. L. c. 118,
§ 1, (re-enacted in St. 1907, c. 576, § 1,) requiring the "net assets" of an insur-
ance company to be ascertained after deducting all "claims for losses."

Under R. L. c. 118, § 7, which provides that if the insurance commissioner, upon
examination, is of opinion that any domestic insurance company is insolvent, or
that its condition is such as to render its further proceedings hazardous to the
public or to its policy holders, he shall apply to the Supreme Judicial Court for
an injunction restraining it in whole or in part from " further proceeding with
its business," if it appears upon an information filed by the insurance commis-
sioner that the defendant is insolvent for the purpose of this proceeding, having
outstanding against it disputed claims exceeding its assets, and if the defendant
consents to the issuing of an injunction against its writing new policies, a master
is not justified in finding that the defendant's condition is not such as to render
its further proceedings for the purpose of winding up its affairs hazardous to
the policy holders, because the immediate settlement in full of the claims of
some of the policy holders would be hazardous to the others, and the payment
of losses constitutes an important part of the insurance business; and an abso-
lute injunction should issue.

HAMMOND, J.   This is an information brought by the insurance
commissioner under the provisions of R. L. c. 118, § 7, against
a domestic insurance company, in which the informant states
that he is of opinion that the company is insolvent and that its
condition is such as to render its further proceedings hazardous
to its policy holders and to the public.   The defendant filed an
answer denying that it was insolvent or that its condition was
such as to render its further proceedings hazardous to its policy

holders or to the public, and averring that it was " no longer proceeding with its business as an insurance company, and had long since ceased to write or issue policies of insurance."

The case was heard by a single justice * of this court upon the informant's exceptions to the master's report and the defendant's motion for further modification of the interlocutory injunction which had been theretofore issued.  The justice sustained the fourth and the eighth of the informant's exceptions, overruled all the others, denied the defendant's motion for a modification of the injunction, and ordered the injunction to be made perpetual and receivers to be appointed; and then reserved the case for the full court upon the pleadings, the master's report, the informant's exceptions † and the defendant's motion.

The fourth exception raises the question whether the master's finding that the defendant was not insolvent is correct.  Upon the theory adopted by the master the excess of assets over liabilities on November 16, 1906, the date of the filing of the information, was $39,291.55, and on January 31, 1907 (the date agreed. upon by the parties as convenient for a computation of the assets and liabilities in case the financial condition should be considered as of some day since the information was filed), was $31,052.78.

In reaching this result the master disregarded a class of claims aggregating over $300,000.  If these claims are to be upon the debit side of the account, then it is plain that the master's con-

---

* *Sheldon*, J.

† The reasons set forth for the informant's fourth exception were as follows : " For that the master has found that the defendant is solvent.  The evidence shows that there are outstanding in the hands of Boston attorneys about one hundred and twelve claims against the defendant, aggregating over $300,000, which claims are those of policy holders of the defendant, who allege that they were induced to compromise their claims against it by the false representations made to them by one of its authorized agents.  The informant contends that these claims should be considered as contingent liabilities in ascertaining the solvency of the company, and that if this is done the company is clearly insolvent.  The master has disregarded these claims in estimating the defendant's liabilities, and the informant objects to this action and ruling of the master."

The reasons set forth for the informant's eighth exception were as follows : " For that the master found and ruled that upon all the evidence the defendant's condition is not such as to render its further proceedings for the purpose of winding up its affairs hazardous to its policy holders."

clusion is wrong and the exception must be sustained. As to this matter the master reports that as a result of the great fire in San Francisco of April, 1906, " about five hundred and eighty claims, aggregating in amount about eleven hundred thousand dollars were made against the respondent; that all but about seventy of these had been compromised and settled on November 16, 1906, and that all but about sixty had been settled on January 31, 1907. Most of these settlements were made on the basis of forty per cent of the face of the policy. In some cases, however, the defendant paid larger amounts (in one case as much as ninety per cent of the face of the claim), because it considered it expedient to placate certain claimants." He further finds, if the facts are in any way material, as follows : " There are also in the hands of attorneys in Boston about one hundred and twelve claims against the defendant, aggregating over three hundred thousand dollars. These are claims of policy holders in California, who allege that settlements made by them with the defendant, under which they received forty per cent of the amount of their claims, were obtained by the false representations of an agent of the defendant. The claims, or many of them, were solicited by attorneys in California (but not by those in Boston) who agreed to pay the expenses of enforcing them in consideration of agreements by the claimants to pay said attorneys one half the amounts recovered. No suits have yet been brought on these claims. The informant offered to prove that agents or officers of the defendant, after the San Francisco fire, made false statements as to the defendant's financial condition, for the purpose of inducing policy holders in San Francisco to accept less than the amounts due them under their policies, and that certain policy holders relied and acted upon said statements. I excluded such evidence, except so far as it tended to show admissions of insolvency by authorized agents of the defendant, as being immaterial to the issues before me under the terms of the order of reference and the memorandum of decision therein referred to. I therefore make no finding as to the validity of the above claims."

It is not explicitly stated in the report whether these claims in the hands of the Boston attorneys are included in the five hundred claims aggregating $1,100,000 previously mentioned in

the report as, with a few exceptions, compromised and settled. That question however is immaterial, because, even if they are included, it is plain that so far as respects these latter claims the finding that they have been compromised and settled must be taken subject to the modification contained in the subsequent finding that these policy holders contest the validity of the settlements on the ground of fraud practised by the respondent and its agents. Shortly stated, the master has found that there are claims aggregating $300,000, which the defendant contends have been settled, but the validity of the settlement is disputed by the policy holders. It is clear that if the validity of the claims in the hands of the Boston attorneys should be finally established to the extent of even one-seventh of the amount claimed, there would be a substantial excess of liabilities over assets.

In his investigation as to the solvency of the company the master was thus confronted with these disputed claims. They are claims made by the policy holders for indemnity for losses suffered. Upon these policies a certain amount had been paid by the defendant. What was the master to do? Manifestly he could not try and determine finally the validity of each claim and the true amount thereof. Such would not only have been impracticable, but it would have been absolutely useless, because even if it had assumed to try and determine any claim, his conclusion would not only have settled nothing as between the insurer and the insured, but would not have been even evidence on that question in a suit between them on the policy. And yet it is plain that it hardly would be safe to ignore the existence of these claims as having no bearing whatever upon the financial condition of the defendant. The action upon each claim when brought would be upon the policy, and unless the validity of the settlement should be sustained the plaintiff would be likely to recover. They were claims for losses.

It is strongly urged by the defendant that the burden of proving insolvency is upon him who affirms it; that the claims of which we are speaking cannot properly be called the claims of policy holders at all, but rather are claims made by persons who were formerly policy holders who have settled their claims under the policies formerly held by them, and that "the issue is not

whether certain persons intend to present claims as to which the record shows compromise settlements but what liabilities actually exist," and that the same principle would apply even if the claims " had reached the status of suits of law at the time of hearing."

The question whether an insurance company is insolvent is frequently attended with great difficulty, and where upon the facts the question is close it cannot ordinarily be definitely solved until after the lapse of considerable time. Without considering the degree of precision to which the evidence must go in other proceedings in order to establish the fact of insolvency, we are of opinion that for the purpose of a proceeding such as this under the statute the Legislature has provided a plain, practical working rule for our guidance. R. L. c. 118, § 1, (re-enacted in St. 1907, c. 576, § 1,) reads as follows: " ' Net assets ' means the fund of an insurance company available for the payment of its obligations in this Commonwealth, . . . after deducting from such funds all unpaid losses and claims, and claims for losses, and all other debts and liabilities inclusive of policy liability and exclusive of capital." " Claims for losses " is a very broad term and must be considered as including all claims, as well those which finally shall turn out to be invalid as those which finally shall turn out to be valid. Whenever the insurance commissioner finds that by applying the statute rule any insurance company is deficient in assets for the payment of its obligations, he is justified in proceeding against it as insolvent, and the proof of such a state of things is sufficient proof of the insolvency of the company for the purposes of this proceeding.

Applying this rule to the facts stated in the master's report, it is seen that the insolvency of the defendant is amply shown; and the fourth exception must be sustained.

The master " finds and rules that the defendant's condition was not such as to render its further proceedings for the purpose of winding up its affairs hazardous to the policy holders," and the eighth exception raises the question whether this is correct. As to this it is to be observed that the defendant through its counsel announced to the master at the hearing that it did not intend or desire to proceed with its business in the sense of

writing new policies or of entering into any new obligations except for the purpose of winding up its business and paying its obligations as they matured; and that it was willing to make a stipulation to that effect and to be enjoined from so proceeding. At the argument before us we understand the defendant to take the same position. Consequently the question as to hazard to the public as distinguished from its present policy holders is not before us.

It is strongly contended by the defendant that even if it is insolvent there can be no hazard to its policy holders. But we cannot accede to that view. The defendant desires to go on and settle losses. It is plain that if the defendant does this and pays the losses as fast as judgments are obtained against it or settlements are made, as it desires to do, then in case of insolvency those claimants who last get judgments or last agree upon the amount due will fail to have their claims paid. To allow the defendant to continue to dispose of the assets in this way would be a proceeding hazardous at least to some of the policy holders.

Lastly, it is contended that even if it be insolvent, and even if its further proceedings are hazardous to the policy holders, nevertheless the only injunction that can be issued is against its further proceeding with its business, that is with new business; that the only new business is the issuing of policies; and that inasmuch as it does not propose to issue new policies but only to settle losses on policies already issued, no injunction should issue. This position is untenable. The insurance business, perhaps the most important part of it, especially when considered from the standpoint of the policy holders, includes the payment of losses as well as the issuing of contracts, and the statute should be construed to extend to the prohibition of any part of the business the carrying on of which would be hazardous to its present policy holders. The decision sustaining this exception was correct.

It becomes unnecessary to consider the other exceptions.

*Decree affirmed.*

*H. Parker & E. K. Arnold,* for the defendant.

*D. Malone,* Attorney General, *& J. F. Curtis,* Assistant Attorney General, for the plaintiff.