Commissioner of Insurance *vs.* Century Fire and
Marine Insurance Corporation.

Suffolk.    September 15, 1977. — October 3, 1977.

Present: Hennessey, C.J., Quirico, Braucher, & Wilkins, JJ.

*Insurance,* Commissioner of Insurance, Receivership of insurance company.

An insurance company's capital is impaired if its net assets are less than its stated capital. [475-476]

The Commissioner of Insurance was not required to grant an insurance company a three-month period to make its capital good or reduce it under the provisions of G. L. c. 175, §§ 6, 69-71, where it did not appear that the company could with safety to the public and its policyholders be permitted to continue to transact business. [476]

Evidence in a proceeding against an insurance company under the provisions of G. L. c. 175, § 6, warranted the appointment of a receiver for the company and an order enjoining it from transacting further business. [476-478]

There was no merit to an insurance company's contention that it was denied due process of law in an action by the Commissioner of Insurance for appointment of a receiver. [478]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on November 22, 1976.

The case was heard by *Kaplan, J.*

*Herbert D. Lewis* for the defendant.

*Terence P. O'Malley,* Assistant Attorney General (*Terry Jean Seligman,* Assistant Attorney General, with him) for the plaintiff.

Braucher, J.    Pursuant to G. L. c. 175, § 6, a single justice of this court concluded that the capital of the defendant insurance company is impaired, that it cannot with safety to the public and its policyholders be permitted to continue to transact business, and that its condition is such as to render its further transaction of business

hazardous to the public, its policyholders and creditors. He issued a permanent injunction and appointed a permanent receiver. The defendant appeals, and we affirm.

The defendant was incorporated as an insurance company in 1971 and was capitalized at $1,000,000. In 1972 the Commissioner of Insurance (Commissioner) commenced a rehabilitation proceeding against the defendant under G. L. c. 175, § 180B; the proceeding was terminated by stipulation in 1973. The requirements of that stipulation, which in the main have been met, included a requirement that the defendant confine its business to the writing of fidelity and surety lines of insurance under G. L. c. 175, § 47, Fourth. Late in 1975 the deputy commissioner of insurance initiated an investigation of the defendant, which culminated in a special report as of August 31, 1976, and October 31, 1976.

On November 22, 1976, the Commissioner commenced the present proceeding before a single justice of this court, and a temporary injunction and an order appointing a temporary receiver were entered ex parte the same day. Later the temporary receivership was continued by agreement, and the matter was referred to the Superior Court for hearings, findings of fact and a report. The Superior Court judge's report, filed January 6, 1977, concluded that the defendant's net assets were not substantially greater than the Commissioner had indicated in his report, that the defendant had a significant and dangerous number of unpaid claims, that the assumption of new risks would pose a hazard to the public, and that the defendant's capital was seriously impaired. The order appealed from was entered by the single justice on March 15, 1977.

The defendant has presented us with a record appendix of eighty-nine pages, with no table of contents or index, contrary to Mass. R. A. P. 18 (d), as amended, 367 Mass. 920 (1976). It has also submitted a brief of sixty-six pages. An addendum to the brief, again without table of contents or index, reproduces thirty-seven pages of the record appendix. The defendant asks us to review more than 500 pages of transcript and voluminous exhibits to determine

373 Mass. 473                                                     475

Commissioner of Insurance *v.* Century Fire and Marine Ins. Corp.

whether the findings, on which the Commissioner, the judge in the Superior Court and the single justice agreed, are supported by the evidence. We have done so, but no useful purpose would be served by a detailed account of the defendant's financial situation.

1. *Impairment of capital.* The defendant contends that its net assets exceed $200,000, and that its capital is therefore not impaired. The defendant, however, was capitalized at $1,000,000, and its capital has not been reduced in accordance with G. L. c. 175, § 71. We think that its capital is impaired if its net assets are less than its stated capital of $1,000,000. The Commissioner claims that the defendant's liabilities exceed its assets by $96,600, while the defendant asserts that its assets exceed its liabilities by $435,400. Under G. L. c. 175, §§ 6, 69-71, a demand that the capital be made good is authorized if there is impairment to the extent of one-quarter or more, that is, if net assets do not amount to more than three-fourths of the company's capital. No theory is presented to us on which the defendant's net assets amount to $750,000, three-fourths of its capital.

The $200,000 figure is found in G. L. c. 175, § 48: an insurance company formed to transact business under G. L. c. 175, § 47, Fourth, must have paid-up capital in an amount not less than $200,000. There was testimony that in 1971 the Commissioner required another $200,000 as surplus, and that he now requires $400,000 as surplus in addition to $200,000 as capital. Those requirements, however, relate to the amount of capital at the time the company is organized. They have no bearing on the question whether there has been an impairment of stated capital exceeding those requirements.

When the defendant was organized, its sole stockholder, Century Management Corporation (the holding company), borrowed $500,000 and contributed it to the defendant as capital. Later the defendant returned this amount to the holding company, which repaid the loan to it. Still later the holding company gave the defendant a note receivable, which has been carried by the defendant as a

"non-admitted asset." The Superior Court judge found that the collectibility of the note is highly doubtful.

The defendant points out that these events, which seem to be primarily responsible for the impairment of its capital, have been known to the Commissioner and his predecessor for several years. It seems to suggest that the impairment is thus legitimated, or at least that the defendant is entitled to a three-month period to make its capital good or to reduce it under §§ 69-71. Under § 6, however, that opportunity is to be afforded if "it appears to the commissioner ... that the company can with safety to the public and its policyholders be permitted to continue to transact business." It did not so appear to the Commissioner, and he was not required to proceed under that provision.

2. *Hazard to the public.* The Commissioner proceeded instead under a separate provision of § 6, authorizing an application for an injunction and the appointment of a receiver for any domestic company "if he is satisfied ... that its condition ... is such as to render its further transaction of business hazardous to the public or to its policyholders or creditors." His special report of the examination of the defendant reached conclusions as of August 31, 1976, that were of such an adverse nature that it was deemed advisable to review more recent data; the examiners felt that "the Department must take steps to protect the public interest and prevent any further writing by this Company." After a review as of October 31, 1976, the examiners recommended "that operations of this Company be terminated."

Pursuant to G. L. c. 175, § 4, the Commissioner's special report was "admitted, in the discretion of the court, ... as prima facie evidence of the facts stated in such report." See *Commissioner of Ins.* v. *First Nat'l Bank*, 352 Mass. 74, 80-81 (1967). The Superior Court judge made a number of revisions of detail, but the revisions did not affect the conclusions either in his view or in that of the single justice.

"The commissioner, as we have recognized, has been

373 Mass. 473                                          477

Commissioner of Insurance *v.* Century Fire and Marine Ins. Corp.

given very broad supervisory powers over insurance companies." *Rockland Mut. Ins. Co.* v. *Commissioner of Ins.,* 360 Mass. 667, 672-673 (1971), and cases cited. The "evaluation of a company's financial status is peculiarly within his technical competence and expertise." *Maryland Cas. Co.* v. *Commissioner of Ins.,* 372 Mass. 554, 562 (1977). Even if a company ceases writing new business and thus eliminates hazard to the public, receivership may be justified by hazard to existing policyholders. *Cutting* v. *American Ins. Co.,* 197 Mass. 131, 135-136 (1908).

The principal contentions of the defendant relate to the following balance sheet items: (1) real estate, (2) loss payment recoverable, (3) outstanding loss reserves, and (4) unearned premium reserve. (1) The Superior Court judge found that the real estate was undervalued by the Commissioner by approximately $35,000, but we think the value was properly limited to 10% of invested assets in view of G. L. c. 175, § 64, prohibiting greater holdings. (2) The claimed loss payment recoverable, $56,000, was properly disallowed as an asset because contingent on foreclosure proceedings and hence not "available for the payment of losses," as required by G. L. c. 175, § 11. (3) The Commissioner charged the defendant with $303,000 more than it acknowledged under G. L. c. 175, § 11, requiring a charge for "all unpaid losses and claims for losses." The difference is composed of judgments, complaints, and matters in litigation. Contrary to the defendant's contention, we think "claims for losses" include claims which may turn out to be invalid. See *Cutting* v. *American Ins. Co.,* 197 Mass. 131, 135 (1908). The defendant was charged with only half of the amounts in litigation. (4) Even though, as the defendant contends, premiums on surety bonds are not subject to return like premiums on casualty insurance, we think the Commissioner may properly require that part of the premiums be treated as unearned under G. L. c. 175, § 10, so long as there is a continuing exposure to loss. See G. L. c. 175, § 107. No argument is made as to the amount of the unpaid premium reserve, $112,000, if the reserve is required.

We therefore uphold the determinations of the Commissioner, the Superior Court judge, and the single justice. We do not consider the less significant balance sheet items. Nor do we consider the question, which the single justice did not reach, whether the defendant violated G. L. c. 175, § 105, requiring "suitable and sufficient collateral agreements of indemnity" for a liability in excess of one-tenth of its net assets.

3. *Due process of law.* We recognize that the appointment of a receiver "can often have irreversible and far-reaching consequences for the debtor and others. Therefore, particular care must be exercised by a judge in order to ascertain that facts exist which justify, and in the judge's discretion require, the appointment of a temporary or permanent receiver." *George Altman, Inc.* v. *Vogue Internationale, Inc.*, 366 Mass. 176, 179 (1974). Particular care has been taken in the present case. On the facts found, there is no merit to the defendant's contention that it has been denied due process of law. Cf. *Commissioner of Ins.* v. *Commonwealth Mut. Liab. Ins. Co.*, 297 Mass. 219, 221 (1937).

*Judgment affirmed.*