498 So.2d 825 (1986)
STATE SECURITY LIFE INSURANCE CO.
v.
STATE of Mississippi, By and Through George Dale, Commissioner of Insurance.
No. 56559.
Supreme Court of Mississippi.
November 19, 1986.
*826 Frank W. Trapp, Phelps, Dunbar, Marks, Claverie & Sims, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Al Nuzzo, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
This case is on appeal to us by the State Security Life Insurance Company (SSLIC) from a default judgment of the chancery court of Rankin County making permanent a temporary restraining order. Finding the chancellor erred in entering such judgment when there was an answer on file and the individuals were present in court desiring a trial (albeit with a request for a continuance), we reverse.

FACTS
On October 3, 1984, Dale filed a complaint in the chancery court of Rankin County, naming as defendant State Security Life Insurance Company (SSLIC), Gardner Land Co., Inc. (GLC), Mississippi Insurance Service, Inc. (MIS), and Security Management Corporation (SMC), in accordance with Miss. Code Ann. § 83-1-29 (Supp. 1985). The complaint was filed following a Department of Insurance (Department) examination of SSLIC, the complaint averring that SSLIC was insolvent and its condition such as to render further business operations hazardous to the public and its policyholders.
The complaint further alleged that GLC, MIS and SMC were but shell corporations for SSLIC, and in addition made a number of other allegations, including one averring that SSLIC had caused false statements to be made in its annual statement submitted *827 to the Department. The complaint additionally sought to pierce the defendants' corporate veil and have all corporate assets placed in receivership. The complaint was 39 pages, with an additional 25 pages of exhibits.
The complaint asked for a temporary restraining order (TRO) prohibiting SSLIC from further business and appointing Dale as the temporary receiver. Chancellor Billy G. Bridges, on the basis of the verified complaint, granted the relief sought without notice on October 3. The chancellor granted a mandatory injunction compelling GLC, MIS and SMC to turn over to Dale all documents and other records which were requested by him in writing for the purpose of determining the financial condition and legality of the conduct of those entities. The chancellor also issued a fiat requiring SSLIC to appear at 9:00 a.m. on October 12, 1984, and to plead, answer or demur to the complaint, and show cause why the temporary order should not be made permanent. Notice was served on the defendants on October 4.
On October 5 Jackie Gardner, president of SSLIC, withdrew $38,000 from three separate savings accounts at First Jackson Savings Bank. The accounts belonged to GLC, MIS and Gardner's personal account.
On October 8 the State filed an amendment to the complaint, adding four additional defendants alleged to be "spokes in the wheel of deceit and deception" perpetrated by SSLIC. The defendants were Pinetree Investments of Forrest County, Inc., Delta Computer Management, Inc., Educators Security, a limited partnership, and Gardner, individually. The amended complaint sought a TRO prohibiting all defendants from removing any funds from any depository, and to compel them to return funds withdrawn since October 4. The corporations were required to turn over their records to the State. The amended complaint also sought to place all assets of the new defendants in receivership. Chancellor Bridges granted the relief sought in the amended complaint and, thereafter, issued a second fiat again setting hearing on the amendment to the complaint for October 12, 1984, at 9:00 a.m. when the defendants were to appear and answer, plead or demur to the complaint.
On October 9 Fred A. Ross, Jr., was retained as counsel for SSLIC. On October 10 Ross submitted a proposed order continuing the trial from October 12 to October 17. Apparently, Ross made an ore tenus motion for the continuance and represented to Chancellor Bridges that the State's attorneys had agreed to the continuance. Relying on Ross' representation, the chancellor signed an order continuing the cause.
Upon learning that the State's attorneys had not agreed to the continuance, Chancellor Bridges rescinded the continuance the same day (October 10) and reinstated the original order. Shortly thereafter, the State attempted without success to inform Ross, who had just left on an 11:00 a.m. flight to Washington, D.C. A copy of the modified order was delivered to Ross' office, where his secretary acknowledged receipt at 1:40 p.m. on October 10.
On October 11 W.S. Moore, on behalf of Ross, filed a petition to remove the proceeding to the U.S. District Court for the Southern District of Mississippi. A hearing was held before Judge William H. Barbour on October 12 at 9:00 a.m. At approximately 10:05 a.m. Judge Barbour entered an order remanding the proceeding. That order was recorded at the chancery clerk's office for Rankin County at 10:35 a.m. Thereafter, the hearing originally scheduled for 9:00 a.m. was commenced before Chancellor Bridges at the Rankin County Courthouse. At the hearing, an introductory statement was first made by Assistant Attorney General Stephen Kirchmayr, setting forth the jurisdictional matters of this proceeding. Kirchmayr told the court that upon the filing the petition for removal, the chancery court lost its jurisdiction. That jurisdiction was returned to the chancery court upon entry of the order of remand. Following that, Deputy Attorney General W.D. Coleman, began an introductory statement of the *828 background for the institution of the instant proceeding.
During the course of Coleman's oration, Gardner, together with Moore, entered the courtroom. Moore stated he was appearing that day at the request of Fred Ross, and that he did not represent SSLIC, Gardner, or any of the other defendants.
After the government's statement, the chancellor asked Moore if the defendants were seeking a continuance or were they prepared to go to trial. Moore responded that if they had access to the records they could be ready. The chancellor then stated that he would give the defendants the opportunity to review the records during the hour and a half noon recess.
Following the noon recess, Gardner testified in support of a continuance. He stated that SSLIC was unable to present a case in their defense without access to their records. He testified that during the noon recess the building was locked up which prevented his access to the records.
After statements by the court and Coleman setting forth the facts relating to the earlier continuance requested by Ross, which was denied, the chancellor asked both parties what injury would be suffered if he granted a continuance. The State said that a delay in appointing the permanent receiver would affect the ability of the receiver to give favorable bids on the insurance business of SSLIC. The court asked Moore if he was aware of any injury that would result if the court did not grant a continuance, when the defendant would have available all tools of dissolution and other motions toward the defense of the injunction. Moore stated the injury to the defendants would be that they would not receive their day in court.
Following those discussions, Chancellor Bridges denied the motion for a continuance.
Thereafter, at around 3:45 p.m., Coleman moved for a default judgment to be entered because no answer had been filed. During the course of Coleman's argument for default judgment, Moore announced to the court that he had just been retained by Gardner to represent the defendants. On behalf of the defendants, Moore filed a written answer in which there was a general denial of all the allegations in the complaint: "Come now all the defs [sic] and deny all the allegations allegations [sic]."
Chancellor Bridges allowed the answer to be filed and overruled the State's motion to strike the answer. The court then went on to elaborate that he was going to grant the motion for relief by default on the appointment of a permanent receiver.
After making those rulings, Chancellor Bridges asked for counsel to meet him on Monday morning to discuss proceedings with respect to the remaining defendants. The chancellor said that he wanted the defendants to have access to the records. The attorneys agreed to swap files for the weekend.
On the same day, Chancellor Bridges entered a written decree by default. In the decree by default, the court made findings that no answer had been filed by the defendants by the return time, 9:00 a.m. on October 12, 1984, and that there had been an application made pursuant to MRCP Rule 55 by plaintiff for default judgment. The decree observed that after that application was made, at 3:45 p.m., Moore announced that he had become employed by Gardner. The decree further stated that "... notwithstanding the filing of what purports to be an answer for said defendants" by Moore, the application for default had merit. The default decree continued the temporary injunction compelling the remaining defendants to provide records to the State and otherwise made all other temporary injunctions permanent.
On October 16, 1984, the remaining defendants filed for bankruptcy in the U.S. Bankruptcy Court of the Southern District of Mississippi, Jackson Division. Thereafter, this proceeding was removed from the Rankin County Chancery Court to the bankruptcy court.

LAW
Before an analysis of SSLIC's assignment of errors, we first consider the statutes *829 that authorize the Commissioner of Insurance to revoke SSLIC's certificate of authority. Miss. Code Ann. § 83-1-25 (Supp. 1985) provides that the Commissioner shall examine the financial stability of the State's insurance companies. Miss. Code Ann. § 83-1-29 (Supp. 1985) provides that:
... if, upon examination, he is of the opinion that any domestic insurance company is insolvent, or has exceeded its powers, or has failed to comply with any provision of law applicable to it, or that its condition is such as to render its further proceeding hazardous to the public or to policyholders, ... he shall suspend its license. If he deems it necessary, he shall apply to a judge of the chancery court to issue an injunction restraining it, in part or in whole from further proceeding its business. Such judge, may in his discretion, issue the injunction forthwith or upon notice and hearing thereon and, after a full hearing of the matter, may dissolve or modify such injunction, or make it permanent, may make all orders and decrees needful in the premises, and may appoint agents or receivers to take possession of the property or effects of the company and to settle its affairs, subject to such rules and orders as the court may, from time to time, prescribe according to the course of proceedings in equity.
Miss. Code Ann. § 83-6-37 (Supp. 1985) gives the Commissioner the power to order any insurer to produce its records, books or other financial information.
The receivership statutes are at § 83-23-1, et seq.
From a review of all applicable statutes and from an analysis of insurance receivership proceedings in other jurisdictions, it is clear that the State's action was proper up until the time of trial. Ex parte orders suspending an insurance company's certificate, temporary restraining orders, and temporary appointments ordered without notice have all been found acceptable when the policyholders interests' appear endangered. See: Commissioner of Insurance v. Century Fire and Marine Insurance, 373 Mass. 473, 367 N.E.2d 842 (1977); Murphy v. Ambassador Insurance Co., 195 N.J. Super. 274, 478 A.2d 1243, 1244-45 (1984); Commonwealth Insurance Dept. v. Safeguard Mut. Ins. Co., 18 Pa.Cmwlth. 195, 336 A.2d 674, 680 (1975); Washington American Life Ins. Co., v. State, 545 S.W.2d 291 (Tex.Civ.App. 1977); Manning v. State, 423 S.W.2d 406 (Tex.Civ.App. 1967).
The justification for such immediacy has been based on the protection of the policyholders of the insurance company. A review of the statutes which give the Commissioner of Insurance authority make the interest of the policyholder paramount. Sanders v. Neely, 197 Miss. 66, 19 So.2d 424 (1944). When the Commissioner is of the opinion that an insurance company's condition could endanger its policyholders, he may suspend its license and take other appropriate measures. Miss. Code Ann. § 83-1-29 (Supp. 1985); Mississippi Ins. Guaranty Assoc. v. Gandy, 289 So.2d 677 (Miss. 1973).
As stated the chancellor did not abuse his discretion in granting the TRO, the temporary injunction, and the order compelling the defendants to produce their records. However, it should be noted that the cases from other jurisdictions previously cited all provided for a hearing on the merits of the injunction before the injunctions and appointments were made permanent. We also note that the language of Miss. Code Ann. § 83-1-29 (Supp. 1985) provides for "a full hearing." Additionally, we recognize that all cases are consistent with the principle that a defendant must be given a fair opportunity to oppose an application for preliminary injunction when it is consolidated with a trial on the merits, which is basically the situation here. 6 Moore's Federal Practice, 65.04 [3], at p. 65-57, 59; MRCP Rule 65(a)(2) (comment). See, e.g., Marshall Durbin Farms, Inc. v. National Farmers Org., 446 F.2d 353 (5th Cir.1971). Thus, at any such hearing, the government is required to put on proof of why the injunction should be issued.
*830 No distinction exists between the right to default judgment for permanent injunction and the right to a default judgment in any other lawsuit. TWA v. Hughes, 449 F.2d 51, 63-64, 69 (2d Cir.1971), rev'd on other grounds 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Therefore the chancellor's entry of a default judgment operated as a hearing on the merits. If the default judgment was improperly entered, it is obvious that SSLIC was denied due process of law.

A.

ERROR IN ENTERING DEFAULT JUDGMENT
The authority of a trial court to enter a default judgment is set out in Rule 55(a), (b) of the Mississippi Rules of Civil Procedure (MRCP).
Prior to January 1, 1982, the effective date of the MRCP, default judgment and decrees pro confesso were governed by statutes and case law. See Miss. Code Ann. § 11-7-121 (circuit court), and Miss. Code Ann. § 11-5-17 (chancery court).
Under previous Mississippi decisions, the law stated that a judgment by default could not be taken against a defendant when an answer was pending, even if the answer is "filed out-of-time or [was] defective in form or substance, unless it is such that it may be treated as a mere nullity." Randall v. Gunter, 181 Miss. 332, 179 So. 362 (1938); Dalton v. Rhodes Motor Co., 153 Miss. 51, 120 So. 821 (1929); Hambrick v. Dent, 70 Miss. 59, 11 So. 608 (1892).
Thus, in Taylor v. McNairy, 42 Miss. 276 (1862), we held no default could be entered where an undisposed plea was on file. In Mayfield v. Barnard, 43 Miss. 270 (1870), we held that where there was on file a plea which might ultimately be treated as a nullity, and a demurrer had been interposed as to such plea, no default judgment could be entered against the defendant until the trial court had ruled on the demurrer. This Court held that where a plea had been stricken as frivolous it was within the trial court's discretion to enter a judgment for want of a plea, or to allow another plea.
In this proceeding, SSLIC, together with the other defendants, filed a general denial immediately after the State made a motion for default judgment. The State's motion to strike the answer was denied by the chancellor. Consequently, at the time the default was entered, an answer as to which the chancellor had overruled a motion to strike was pending. It is thus clear that under pre-rules procedure, the chancellor erred in granting a default judgment.
Turning now to our new rules, Rule 55(a), (b) in pertinent part states:
(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.
(b) Judgment. In all cases the party entitled to a judgment by default shall apply to the court therefor. If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such applications; however, judgment by default may be entered by the court on the day the case is set for trial without such three days' notice.
Under Rule 55 a party who has made no appearance whatsoever by himself or an attorney is not entitled to any notice before entry of default by the clerk, and entry of default judgment by the trial court. In this case there had been an appearance of sorts by the defendants, and if an attempt had been made to secure a judgment by default prior to the trial date, the three day notice provision of Rule 55(b) would have been necessary. See Charlton L. Davis & Co. v. Fedder Data Center, 556 F.2d 308 (5th Cir.1977) (appearance broadly defined); Segars v. Hagerman, 99 F.R.D. 274 (N.D. Miss. 1983).
*831 However, since there was no effort to secure a pre-trial date default judgment, and instead the default judgment was rendered on the trial date, the three day notice provision of Rule 55(b) does not apply in this case.
We are thus confronted with the question: there being on file an answer which the chancellor had upon motion refused to strike, and with the parties appearing in person and by counsel on the date of trial, requesting a continuance, was it error for the court to render judgment by default?
In the recent case of Wheat v. Eakin, 491 So.2d 523 (Miss. 1986), we held that where there was a defective plea that may have been subject to a motion to strike, it was error to enter judgment by default in absence of such motion and order.
Since we have not specifically interpreted this question under our rules, we must also rely on Federal court decisions under Rule 55. Federal Rule 55 has no provision for a court's inherent authority to enter a default judgment on the trial date without notice. Hwever, it is well established that a federal judge may enter default judgment for failure to prosecute or to comply with procedural rules. Flaska v. Little River Marine Construction Co., 389 F.2d 885, 887 (5th Cir.1968); Fisher v. Taylor, 1 F.R.D. 448 (E.D.Tenn. 1940). Of a court's wide range of remedies, however, the entry of default judgment is the most drastic, and should be applied only in extreme circumstances. Independent Productions Corp. v. Loew's Inc., 283 F.2d 730, 733 (2nd Cir.1960); Durgin v. Graham, 372 F.2d 130, 131 (5th Cir.1967); accord Wheat v. Eakin, 491 So.2d 523, 526 (Miss. 1986) (disposition of cases on their merits favored over default).
We are not confronted with a situation where the chancellor struck an answer and gave a default judgment. Under the facts of this case, the lower court might have been justified in striking the answer. But however barren of substance this answer appears in this appeal record, the fact remains the chancellor declined to strike it.
The State plausibly argues that the answer was a nullity because the denial was not made in good faith with knowledge of the pleadings. See MRCP Rule 11. Again, we must reiterate that the answer was not stricken by the lower court. The State has filed no cross-appeal arguing that the chancellor abused his discretion in allowing the answer.
Neither are we faced with a simple refusal to continue the case. What confronts us is a default judgment which terminated the contest.
If a party duly served with process has made no appearance whatever, either in pleading or in person, then a default judgment is, of course, proper. Strain v. Gayden, 197 Miss. 353, 20 So.2d 697 (1945). Yet, if there is on file some pleading not an absolute nullity, or there is an appearance by a party either in person or by representative and the trial court discerns a sincere effort to contest the case, no judgment by default should be entered. In this case the defendants passed this test. The chancellor could very properly have refused a continuance, or granted a few days' continuance and kept the TRO in effect. Yet, under the facts of this case, rendering a judgment by default removed any possibility of a hearing on the merits on all issues, and the learned chancellor erred in doing so.
REVERSED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE, P.J. and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.