547 So.2d 46 (1989)
Douglas E. BARFIELD
v.
MISSISSIPPI STATE BAR ASSOCIATION.
No. CM-263.
Supreme Court of Mississippi.
June 28, 1989.
Douglas E. Barfield, Jackson, pro se.
Michael B. Martz, Jackson, for appellee.
EN BANC.
ROY NOBLE LEE, Chief Justice, for the Court:
Douglas Barfield has appealed to this Court from an order of the Complaint Tribunal entered upon default, disbarring him from the practice of law.

FACTS
Douglas Barfield graduated from law school at the University of Mississippi Law Center on May 21, 1984, with the degree Juris Doctor. He ranked No. 82 out a class of 105, and had an earned GPA of 2.45. Respondent was admitted to practice law in the State of Mississippi and became subject to the disciplinary jurisdiction of the Supreme Court of Mississippi and its designated agencies.
On or about April 29, 1986, the respondent rented a post office box in his name in the City of Jackson, MS, i.e., P.O. Box 2811.
On May 1, 1986, the respondent sent a letter to the Law Center at University of Mississippi, to the attention of Ms. Dorothy *47 Goss, requesting that she send to the named individual signing the letter a certified copy of the transcript of that person's academic record at the University of Mississippi for the years 1981 through 1984. The letter was signed by someone using the signature of "Jimmy Reid Sledge." Mr. Sledge did not prepare, draft, sign, authorize, or consent to the use of his name or participate in any way with preparing and sending the letter.[1] The return address for the letter was the post office box that Mr. Barfield had rented. On May 6, Ms. Goss, in response to the letter, forwarded a copy of Mr. Sledge's transcript as requested.
On June 4, 1986, respondent wrote the New Orleans law firm of Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, to explore employment opportunities with that firm. In the letter of June 4, the respondent enclosed a resume and transcript that provided the firm with details of what Barfield represented to be the respondent's experience and education. The transcript was the transcript of Mr. Sledge. On the front of the transcript, respondent placed his picture and typed in his name and adopted the transcript of Mr. Sledge as his own.
Upon receiving respondent's letter and transcript, the New Orleans law firm represented by Paul Deal and other members of the firm interviewed the respondent on several occasions which resulted in an offer of employment and he accepted the offer on July 9, 1986.
On June 6, 1986, the respondent forwarded to the Supreme Court of Louisiana's Committee on Bar Admissions his application to take the July, 1986, Louisiana Bar. On June 30, 1986, Betty Ardowin, Assistant Secretary to the Committee on Bar Admissions of Louisiana, advised respondent that the committee had not received a certification from the University of Mississippi School of Law's Dean verifying the respondent's attendance and graduation at such school or a certificate of good standing from the Mississippi State Bar. Barfield never provided such certification to the Louisiana Bar and did not in fact take the Louisiana Bar exam.
From August through October of 1986, Barfield represented to the employing law firm that he had in fact taken the Louisiana Bar in July of 1986. When the Bar examination was administered and the examination results released to the public, the respondent advised the law firm that he had not received the results of his examination. Mr. Deal of that firm, upon being so informed, inquired of the Louisiana State Bar as to why the respondent had not received a grade. The law firm then learned that the respondent had been refused permission to take the Louisiana State Bar and, in fact, had not taken the exam.
After a number of meetings with the respondent, during which the respondent insisted that he had not been denied permission to take the Louisiana Bar and had taken such examination, the law firm requested a meeting with the Louisiana State Bar officials charged with the responsibility of administering and conducting the Bar exam. The respondent personally requested the scheduling of such meeting, but upon being advised that the meeting was scheduled, resigned from employment with the law firm by a letter dated October 3, 1986.
On October 3, 1986, Mr. Deal, acting on behalf of the law firm, wrote the University of Mississippi Law School and requested the following information: (1) a copy of respondent's law school transcript; (2) whether or not respondent served on the Mississippi Law Journal; (3) whether or not respondent served on the Moot Court Board; and (4) whether or not respondent was active in Pi Alpha Delta legal fraternity as an officer and member. The law school responded by letter dated October 9, 1986. This letter advised the New Orleans law firm that respondent did not serve on the Mississippi Law Journal, that he did not serve on the Moot Court Board, and Ole Miss provided a true and accurate transcript of Douglas Barfield, which, of *48 course, was not the transcript he had provided the law firm.
After receiving this information from Ole Miss, Mr. Deal and other employees of the firm began an examination and comparison of the documents and discovered many discrepancies between the grades and other information contained therein. In fact, the law firm discovered that the respondent was none of the things that he represented himself to be to the firm. As noted earlier, respondent's class rank upon graduation was 82 out of 105, but, respondent represented to the law firm that his class rank was 7 out of 105, which was the exact class ranking of Mr. Sledge.
On June 4, 1986, Barfield also inquired of another New Orleans law firm of Liskow and Lewis to explore employment opportunities with that firm. The facts surrounding the inquiry are the same as those involving the contacts with the New Orleans law firm which hired the respondent. This law firm also inquired of the University of Mississippi School of Law and the Law School advised this firm that they could not verify the information as alleged by the respondent.
All of these discrepancies and the alleged deceit on the part of respondent were brought to the attention of the Mississippi State Bar and an investigation was conducted. The investigation resulted in a formal complaint being filed against him.
On May 29, 1987, the formal complaint was filed with this Court. Also on May 29, 1987, the Bar mailed by certified mail an attested copy of the formal complaint with a summons and acknowledgment of receipt of summons. On June 23, 1987, respondent signed the acknowledgment of receipt of summons and formal complaint and included the following phrase:
I acknowledge that I have received a copy of the summons and attested copy of the formal complaint in the above captioned matter as filed in the Supreme Court of Mississippi, this the 23rd day of June, 1987.
In addition to returning the signed acknowledgment, respondent sent a separate handwritten note which said: "I acknowledge receipt of summons and complaint in Confidential Miscellaneous 263." The State Bar points out that neither the acknowledgment nor the note raised any issue over the lack of any exhibits being attached to the formal complaint.
Since service of process was completed on June 23, 1987, respondent's answer, pursuant to Rule of Discipline 8.4 was due within twenty (20) days after the copy of the formal complaint was served. The rule also provided that an enlargement of time could be granted by the presiding judge of the complaint tribunal.
On August 5, 1987, respondent filed a motion for enlargement of time to plead, wherein he moved the tribunal "for an enlargement of time of twenty (20) days from and after the date of his motion." The fourth reason given by respondent in his motion for enlargement of time contained the following allegation: "that the complaint filed herein was filed and served on this defendant without certain exhibits attached or included therein." No further identification of what exhibits were being referred to in said motion was made. The motion was not noticed nor ever brought on for hearing before the presiding judge. Nevertheless, the Bar, as a matter of professional courtesy, did not oppose the motion and unilaterally consented to the additional time. Nevertheless, no answer was ever filed by respondent in the instant proceedings.
After the passage of the twenty days requested by respondent, plus an additional twenty days which were not requested, the State Bar filed its application to the clerk for entry of default and included a supporting affidavit. This resulted in the entry on the docket of default. Thereafter, on September 21, 1987, the Bar filed its Motion for Entry of Default Judgment with a supporting affidavit. Copies were forwarded to the members of the tribunal and respondent. The motion was noticed for a hearing on October 5, 1987.
In his brief, the respondent admits that he had notice, and was aware, of the October 5, 1987, hearing. In spite of this notice, *49 respondent failed to appear before the tribunal or notify the State Bar or the tribunal that he would not be appearing at such hearing. On Monday, October 5, 1987, a hearing was held before the complaint tribunal assigned to hear and consider the formal complaint. Only the State Bar appeared at the hearing. Counsel for the Bar announced to the tribunal that a letter signed by respondent had been delivered to his office on Friday, October 2, 1987, wherein respondent acknowledged receipt of the request for entry of default.
The tribunal considered the allegations contained in the formal complaint filed against the respondent and took them as confessed. The tribunal said:
I think it is important that the information requested by respondent of the Bar, that is, the exhibits that he asked for were attached to and made a part of the formal complaint filed in this cause and that Mr. Barfield received a copy of that complaint and acknowledged the same.
* * * * * *
It is the opinion of the tribunal that this last minute request is an attempt by Mr. Barfield to delay and otherwise confound the proceedings of the tribunal.
The day after, the tribunal entered a default judgment and, subsequently, an opinion and judgment was entered disbarring respondent.

DISCUSSION

I.

DEFAULT WAS IMPROVIDENTLY ENTERED IN THIS CAUSE AS APPELLANT HAD MANIFESTED EVERY INTENTION TO RESPOND TO THE CHARGES AND ALLEGATIONS MADE HEREIN AGAINST HIM AT THE TIME ENTRY OF DEFAULT WAS MADE.
The statement contained in the above issue is simply not borne out by the record. As stated, the respondent was lawfully served with process in the manner and for the time provided by law. Exhibits were attached to the complaint and the respondent acknowledged having been served. Service of process was completed on June 23, 1987, and his answer was due within twenty (20) days after such service. On August 5, 1987, respondent moved the tribunal for an enlargement of time, i.e., twenty (20) days from and after the date of his motion. The tribunal not only allowed the twenty days but an additional twenty (20) days which were not requested. He has admitted that he had notice of the October 5, 1987, hearing and was aware that the disciplinary matter would come up on that day. Yet, no appearance was made by him in person or by representative.
State Security Life Ins. Co. v. State, 498 So.2d 825 (Miss. 1986), cited by respondent, is distinguished from the question being considered. In State Security, an answer was on file when the default was entered. Not so here. In Vining v. Mississippi State Bar Association, 508 So.2d 1047 (Miss. 1987), this Court held that default judgment may be granted in an attorney disciplinary proceeding, where formal complaint has been received, waiver of service of process and entry of appearance have been filed, no answer or any other responsive pleading has been filed, and motion for default judgment has been received.
There is no merit in respondent's first contention.

II.

THE DISCIPLINE IMPOSED BY THE COMPLAINTS TRIBUNAL IS EXCESSIVE, PUNITIVE AND UNREASONABLE UNDER THE CIRCUMSTANCES.
The respondent contends that the discipline recommended by the tribunal is excessive, punitive and unreasonable under the circumstances. Without being repetitive, we emphasize again that the conduct and acts of respondent include dishonesty, fraud, deceit, misrepresentations and moral turpitude. It is unconscionable that an attorney and member in good standing of the Mississippi State Bar would scheme to defraud two reputable firms of attorneys in the State of Louisiana, Board of Bar Admissions of the State of Louisiana, the Mississippi *50 State Bar, and the law school from which he graduated, and, in furtherance of that scheme, commit the fraudulent and deceitful acts, which are set forth in the facts of this opinion. The attorney conduct in Miss. State Bar v. Moyo, 525 So.2d 1289 (Miss. 1988), was comparable to the present case. Moyo was disbarred. Numerous other attorneys have been disbarred for lesser misconduct. See Foote v. Miss. State Bar, 517 So.2d 561 (Miss. 1987).
We are of the opinion that the Complaints Tribunal acted properly in entering a default judgment against the respondent and in recommending disbarment. Therefore, the recommendation of the Complaints Tribunal is accepted and approved, and the conditional judgment of disbarment entered by the Complaints Tribunal is affirmed.
APPROVED AND AFFIRMED.
HAWKINS and DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Mr. Sledge finished No. 7 out of 105 in the class.